(Decided June 26th, 1862.)

# ROBERT HOWARD, *vs.* THE FIRST INDEPENDENT CHURCH OF BALTIMORE.

The system of grading and paving streets, established by the ordinances of the city of Baltimore, is authorized by law, and no constitutional objection exists to the power conferred on the owners of a majority of front feet, of imposing a tax for such purposes on the property of the other owners, against their will.

But the intention of the law is, that the application by the majority-owners shall be made in *good faith*, and any arrangement or combination among parties applying, whereby a few, who wish the work to be done, procure the signatures of others, by paying them therefor, either directly or indirectly, is a *fraud* upon the law, and contrary to public policy.

By contract the defendant, in consideration that the plaintiff would "sign the *petition now in circulation*" for the paving of a street, agreed to pay the plaintiff any excess over $1.15 per *front foot* on his property, which such paving may cost, "*whenever* the plaintiff shall be called on by the proper party" to pay the same; HELD :

That no obligation can arise under this contract, unless the grading and paving was *actually done in consequence* of the *application therein spoken of:* and it appearing that the paving was done under and in consequence of another application two years after, not signed by the plaintiff, he is not entitled to recover.

APPEAL from the Court of Common Pleas.

Action, brought May 1857, by the appellee against the appellant, to recover $300.29, upon the following contract, the execution of which by the defendant was admitted.

"In consideration that the trustees of the First Independent Church of Baltimore, in the City of Baltimore, who own a burial ground on Belle Air Avenue, will sign the petition, *now in circulation,* to the city commissioner, to pave said avenue, I hereby bind myself to pay to said trustees any excess over one dollar and fifteen cents per front foot, which said paving may cost, *whenever* the said trustees shall be called on for the payment of said paving by the proper party. Given under my hand and seal this 12th day of August 1850.

Rob. Howard,  (Seal.)"

Issue was joined on the plea of never indebted as alleged, and it was agreed that all errors in pleading should be waived, and all questions be raised which could be presented if specially pleaded. Several exceptions were taken by the defendant to the rulings of the court, (MARSHALL, J.,) admitting testimony, which need not be stated. It was admitted that the plaintiff, by its register, signed the petition referred to in the above contract, but the proof shows, or tends to show, that this application, though laid before the city commissioner and filed in his office, was never acted on by that officer, nor was the paving done under it, but under another and distinct application for grading and paving made in 1853, by owners of a majority of front feet, which the plaintiff *did not sign.* The plaintiff after due demand by the proper authorities in 1855, paid a paving tax on its property fronting on this avenue for grading and paving the same, amounting to $571.69, making $300.29, over and above $1.15 per front foot. The plaintiff offered two prayers, the first of which asserts its right to recover this excess if the jury find that the plaintiff, in consequence of the agreement contained in the contract, signed the petition therein referred to, that this petition was subsequently filed in the office of the city commissioner, that the avenue was subsequently pav-

ed, that the plaintiff was called on by the Mayor and City Council to pay and paid the tax bill therefor, offered in evidence, and provided they also find that the petition so signed by the plaintiff, was on file in the office of the commissioner at the time when he decided upon the paving of this avenue. The second asserts the plaintiff's right to recover upon the facts stated in the first prayer, if found by the jury, though they may find that the tax for paving which the plaintiff paid, included the cost of grading as well as paving the avenue.

The defendant asked the court to instruct the jury, that if they find from the evidence, that the paving was done under an application for paving and grading, subsequent to the one referred to in the contract sued on, then the plaintiff is not entitled to recover, unless the jury shall further find from the evidence, that the application signed by the plaintiff was used for the purpose of procuring the paving to be done, and was actually so used under the application of 1853, offered in evidence.

The court granted the plaintiff's prayers, and rejected that of the defendant, who excepted to this ruling, and the verdict and judgment being against him, appealed.

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*Jas. Malcolm,* for the appellant:—It is sufficient for the reversal of this judgment to say, that the defendant's prayer contains the true construction of the agreement sued on, and should have been granted.

*Stewart Brown,* for the appellee:—Under the instruction granted, the jury must have found from the evidence in the cause, the execution of the contract, the signing by the church of the petition therein referred to, the subsequent paving of the avenue, and the demand for payment of the paving tax by the proper party, and the payment thereof by the church, and that the petition so signed, was on file in the office of the city

commissioner, when that officer determined to pave. This was all that was necessary in order to entitle the church to recover. The contract is clear and binding. It is under seal, importing a consideration. The church performed all the stipulations required on its part, and is entitled to rely upon the performance of his part by the appellant. The church, using its property on the avenue for a particular purpose, (as a burial ground,) does not appear to have anticipated or derived any advantage from this paving. But the appellant owning a larger amount of property on the avenue, consulting, no doubt, his own interest, induced the church to sign the petition referred to in the contract, and agreed, in consideration of such signing, to pay whatever sum the church might be called on to pay for the paving, exceeding the stipulated sum per foot, and "*whenever*" the church should be called on for payment. The appellant seeks to get rid of this obligation by alleging that the paving was ordered and done under a subsequent petition, signed by a majority of the owners, in which the church did not unite. But the contract contains no condition that the particular petition therein referred to, should be signed by a majority of owners, nor does it imply that the paving should be done exclusively under this application. There might have been one or many petitions according to the pleasure of the proprietors, and when a sufficient number of signers on all the petitions on file had been obtained, the work would proceed. This is what really occurred. The petition of 1850, was filed in the office of the commissioner, was never withdrawn by the church, was seen there a short time before the paving was ordered, and was in fact doubtless, as the jury found, there on file at the very time when the commissioner determined to pave. The appellant, indeed, and others, signed new petitions, which the church was never asked to sign, and was ignorant of, and his object in ignoring the church's petition may have been to get rid of his obligation under the contract. The influence of the church's name had been secured, and all opposition on its part had been silenced by the con-

tract, which it held and now relies on. According to the view taken by the appellant, he would not have been responsible under the contract, provided another petition signed by a majority of owners, could have been procured the day after he executed his contract, and the paving done under such application, while the church did not even bind itself to present the petition to the commissioner, but performed its part of the agreement by simply signing its name thereto. The church never agreed that the petition signed by it should be *used* for the purpose of procuring the paving, to be done under any subsequent application that might be made, it was not required in the contract, nor was it even bound to present the petition, but in point of fact the petition was on file before the commissioner in 1853, and his duty required him to consider it in his action on the matter, whether *used* before him by interested parties or not. *Rev. Ord. of* 1850, *No.* 15, *secs.* 1, 2, 5, 11.

BARTOL, J., delivered the opinion of this court.

By the existing system, established by the Acts of Assembly and the Ordinances of the city of Baltimore, regulating the grading and paving of streets, it is made a necessary preliminary to any action by the city authorities, that the owners of a majority of feet fronting on the street, (or the part of it proposed to be graded and paved,) shall unite in an application to the city commissioner to have the work done, and on such application the city commissioner is authorized to have the work done, although the other proprietors may not assent. The effect of this system is, to enable individual owners to set on foot measures, which will result in imposing burdens upon the property of others against their will.

In the cases of *Steuart, vs. M. & C. C. of Balt.*, 7 *Md. Rep.*, 500, and *Henderson, vs. M. & C. C. of Balt.*, 8 *Md. Rep.*, 352, the constitutionality of these laws and ordinances was discussed; but it was held by the Court of Appeals that it was competent for the city of Baltimore, under the Acts of Assembly, to establish the system, and that no constitutional

objection exists to the provisions of the Ordinance, No. 15, of 1850, which confer upon the owners of a majority of front feet, the power of imposing a burden, or tax, for a public improvement, on the property of other owners against their will. It is manifest, however, that the intention of the law is, that the application shall be made in good faith, that is, by persons who actually assume their share of the burden, and that any arrangement or combination among the parties applying, whereby a few individuals, desirous of causing the grading and paving to be done, procure the signatures of others to the application, by paying them a consideration therefor, either directly or indirectly, is a fraud on the law, and contrary to public policy; and we entertain very great doubt whether any action can be maintained on such a contract, as that sued on in this case.

In the argument of the cause, however, this point was not urged by the appellant, and does not appear to have been made at the trial below. Considering the agreement sued on (for the purposes of this case) as a valid contract, we are of opinion that, according to its true intent and construction, no obligation of the defendant could arise under it, unless it appeared that the grading and paving of the avenue was actually done, in consequence of the application spoken of in the agreement. The evidence in the bills of exception shows that this was not the case. The application signed under the agreement, was dated in 1850, was laid before the commissioner without effect, no action was taken upon it by the commissioner, nor was the grading and paving done under it. Afterwards, in 1853, another and distinct application was made by owners of a majority of front feet, under, and in consequence of which, the work was done; this application was not signed by the plaintiff, nor has the agreement sued on any reference to it whatever.

According to our construction of the agreement, the defendant's prayer ought to have been granted, and upon the facts of the case conceded in the argument, this would be fatal to any recovery by the plaintiff in the action, even if the contract were valid.

The court below erred in granting the plaintiff's prayers, and in refusing that of the defendant.

*Judgment reversed without procedendo.*

(Decided June 27th, 1862.)