# JOHN W. DOANE

*v.*

# THE CHICAGO CITY RAILWAY COMPANY.

*Filed at Ottawa October 11, 1895—Rehearing denied March 13, 1896.*

1. CONTRACTS—*purchasing consent to lay railway in street, illegal.* A contract to purchase the consent of a property owner to the laying down of a street railway in a street upon which his property abuts, for money or other consideration inuring to his exclusive benefit, is illegal and void.

2. SAME—*purchasing signature to petition—when unlawful.* An agreement to sign, for a consideration, a petition as one of the owners of property whose consent is necessary to the granting of permission by the common council for the laying of a street railway track on a street, is an agreement to influence the common council, and for that reason unlawful.

3. SAME—*validity of bond given against laying of second track.* A bond calling for payment of a certain sum by a street railway company to the owner of property abutting on a street in case a second track is laid without his consent, is invalid when it is given to obtain his consent, as one of the owners of more than one-half the property fronting on the street, for the laying of such track.

4. SAME—*company cannot bind itself not to lay second track.* The agreement of a street railway company not to lay a second track without the consent of an owner of property abutting upon the street is invalid, as an attempt by the company to bind itself against what the public interest may require in the future.

*Doane v. Chicago City Railway Co.* 51 Ill. App. 353, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANK ADAMS, Judge, presiding.

This is an action of debt begun by appellant against appellee. A demurrer was filed to the declaration; the circuit court sustained the demurrer; the plaintiff elected to stand by his declaration; and judgment was rendered against him for the costs. Upon appeal to the Appellate Court the judgment of the circuit court was affirmed; and the present appeal is prosecuted from such judgment of affirmance rendered by the Appellate Court.

The action is brought upon the following instrument:

"*Know all men by these presents*, that the Chicago City Railway Company, a corporation created by and existing under the laws of the State of Illinois, is held and firmly bound unto John W. Doane, of the city of Chicago, State of Illinois, his heirs, executors, administrators and assigns, in the penal sum of one hundred thousand dollars, ($100,000,) for the payment of which sum, well and truly to be made, in lawful money of the United States, the said The Chicago City Railway Company binds itself, its successors and assigns.

"In witness whereof, the said The Chicago City Railway Company, by the authority and direction of its board of directors, has caused these presents to be signed by its president and attested by its secretary, and its corporate seal affixed hereunto, this 10th day of May, A. D. 1881.

"The conditions of this obligation are such, that whereas, the said railway company is desirous of obtaining from the city council of the city of Chicago authority and consent to lay its street railway tracks on Wabash avenue, in said city, from Lake street to Madison street; and whereas, it is necessary for said railway company to obtain the consent, in writing, therefor, of certain property owners along the line of said proposed tracks before applying to said council for such authority and consent to construct said proposed tracks; and whereas, the said John W. Doane is the owner of certain property along the line of said proposed tracks from whom it is necessary to obtain such consent to construct said proposed tracks; and whereas, said John W. Doane, upon the conditions hereinafter named, and to be kept and performed by said railway company, its successors and assigns, has given his written consent, as such property owner, to the laying and construction of said proposed tracks on Wabash avenue, between said Lake street and Madison street, by said railway company:

"Now, therefore, in consideration of the consent of said Doane, given as aforesaid, and the further consideration of one dollar in hand paid to said railway company by said Doane, the receipt whereof is hereby acknowledged, the said The Chicago City Railway Company hereby agrees that it will not hereafter build, construct or lay any other or more than a single track railway, without switch or switches, turn-out or turn-outs, along any part of said Wabash avenue, between said Lake street and the north line of said Madison street, (except the necessary curves to connect the said proposed track on Wabash avenue with the tracks of the Chicago West Division Railway Company on Randolph street, and also on Lake street, and to connect said proposed track with the tracks of the Chicago City Railway Company on Madison street,) nor upon any part of Lake street between Wabash avenue and State street, (except the necessary curves to connect the tracks on said Lake street with the tracks of said City Railway Company on State street and with the proposed tracks on Wabash avenue,) without first having obtained the consent therefor, in writing, from the said John W. Doane, his heirs, executors, administrators or assigns. And in the event that the said railway company, its successors or assigns, shall violate the conditions, or any of the conditions, of this obligation, then the said sum of one hundred thousand dollars ($100,000) shall thereupon become due and payable to the said Doane, his heirs, executors, administrators or assigns, as liquidated damages herein, otherwise this obligation to be null and void.

[Seal.]                    THE CHICAGO CITY RY. CO.,
                              By S. B. COBB, *Prest.*

"Attest:   W. N. EVANS, *Sec.*"

In his declaration the plaintiff avers "that at the time of the execution of the said writing obligatory he was, and ever since has been, and still is, the owner and in the occupancy, possession and control of certain lots and

premises fronting upon and adjoining said Wabash avenue in the said city of Chicago, between said Lake street and Madison street in said city, to-wit, the east part of block 9, in Fort Dearborn addition to Chicago, fronting east on said Wabash avenue for a distance of several hundred feet, to-wit, four hundred feet, and bounded on the north by said Lake street and on the south by Randolph street, and having a frontage on each of said last named streets of, to-wit, one hundred and fifty feet, all of which said frontage upon Wabash avenue was and is between the said Lake street on the north and the north line of Madison street on the south, and in respect to which the said plaintiff consented, in writing, at or about the date of said writing obligatory, to the construction and operation of a single track street railroad by the said defendant in Wabash avenue, between said Lake and Madison streets."

The declaration further avers: "That after the execution and delivery of the bond, to-wit, during the year 1881, the defendant, having obtained the consent of the city council therefor, laid down and constructed a single track railway in and along the whole of that part of Wabash avenue lying between Lake and Madison streets, together with the necessary curves to connect the same with the tracks of the Chicago West Division Railway Company on Randolph and Lake streets, and with its own tracks on Madison street, along and in front of the property of the plaintiff, in pursuance of his consent thereto given, as recited in the bond, and had ever since maintained and operated said single track railway, with the curves aforesaid, so consented to by the plaintiff; that afterwards, to-wit, on the first day of January, A. D. 1892, and before the commencement of this suit, the said defendant, contrary to its agreement in the said last mentioned writing obligatory contained, and in violation thereof, laid down and constructed, and has since maintained and operated, and still maintains and operates,

a second and other railway track in, along and upon a portion of said Wabash avenue between said Lake street and said Madison street, to-wit, that part thereof lying between Randolph street and Washington street, without the consent, in writing, of said plaintiff to the construction of said last mentioned track, by reason whereof, and in accordance with the terms and provisions of said last mentioned writing obligatory, the said defendant became liable and obligated to pay to the said plaintiff, as and for his damages, fixed and liquidated, the said sum of $100,000, lawful money of the United States, parcel of the said sum of $100,000 as above demanded."

BENJAMIN F. AYER, for appellant:

It is the legislative power of the State which must determine its public policy. With this power the courts have not been entrusted. It is for them to ascertain and apply the law and the legislative policy, and not to inaugurate the same. *Female Academy* v. *Sullivan*, 116 Ill. 375; *Carroll* v. *East St. Louis*, 67 id. 568; *Vidal* v. *Girard's Exrs.* 2 How. 127.

The burden is always on the assailant to show that the contract is in violation of the settled public policy of the State, and a court should refuse its aid to enforce a contract only in cases free from doubt. *Swann* v. *Swann*, 21 Fed. Rep. 299; *Richmond* v. *Railroad Co.* 26 Iowa, 191; *Richardson* v. *Mellish*, 2 Bing. 229.

A paramount principle of public policy is, that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred, and shall be enforced by courts of justice. *Printing, etc. Co.* v. *Sampson*, L. R. 19 Eq. 462; *Railroad Co.* v. *Richmond*, 19 Wall. 584.

When the requisite number of property owners have signified, by petition, their consent to the exercise of the power, the council can act upon the subject, but not before. *Hunt* v. *Railway Co.* 121 Ill. 638.

The plaintiff gave his consent to the plan submitted by the company, and thereby became estopped from making a claim for damages if only a single track should be laid. *White* v. *Railway Co.* 139 N. Y. 19 ; *Wolfe* v. *Railroad Co.* 15 B. Mon. 404; Lewis on Eminent Domain, sec. 120.

The right of a land owner to damages when his property is injuriously affected by the construction of a railroad in the street in front of it, admits of no question. *Mix* v. *Railway Co.* 67 Ill. 319; *Stone* v. *Railroad Co.* 68 id. 394; *Stack* v. *East St. Louis,* 85 id. 77; *Railroad Co.* v. *Ayres,* 106 id. 511; *Railroad Co.* v. *Scott,* 132 id. 429; *Maltman* v. *Railroad Co.* 41 Ill. App. 229.

An owner of land whose interests are affected by a bill for a railway pending in parliament or in the legislature, has a right to oppose it, and may, because of his private interest, lawfully agree to abandon his opposition; and it is perfectly well settled that such an agreement is a good consideration for a contract to pay money. *Edwards* v. *Railway Co.* 1 M. & C. 650; *Stanley* v. *Railway Co.* 3 id. 773 ; *Lord Howden* v. *Simpson,* 10 A. & E. 793 ; *Simpson* v. *Lord Howden,* 9 C. & F. 61 ; *Capper* v. *Earl of Lindsey,* 3 H. L. Cas. 293; *Hawkes* v. *Railway Co.* 1 DeG., M. & G. 737; *Railway Co.* v. *Hawkes,* 5 H. L. Cas. 331 ; *Taylor* v. *Railway Co.* L. R. 4 Eng. & Irish App. Cases, 628; *Weeks* v. *Lippincott,* 42 Pa. St. 474; *Low* v. *Railroad Co.* 46 N. H. 284.

Some damages are always presumed to follow from the violation of a right or from the breach of a contract. *Burnap* v. *Wight,* 14 Ill. 301; *Deere* v. *Lewis,* 51 id. 254; *Dent* v. *Davison,* 52 id. 109 ; 1 Sedgwick on Damages, (8th ed.) secs. 97-107, and cases cited.

JNO. N. JEWETT, also for appellant.

JULIUS S. GRINNELL, for appellee:

A street surface passenger railway, constructed at grade in the usual manner, and operated simply as a street railway, is not *per se* a public or private nuisance; nor is it a new servitude imposed upon the street, for

which the abutting owners suffer damage, or for which they are entitled to compensation.   Dillon on Mun. Corp. (3d ed.) secs. 722, 723; Booth on Street Railway Law, sec. 82; *Attorney General* v. *Railroad Co.* 125 Mass. 515; *Commonwealth* v. *Temple,* 14 Gray, 69; *Hinchman* v. *Railroad Co.* 17 N. J. Eq. 75; *Railroad Co.* v. *Railroad Co.* 34 id. 164; Cooley's Const. Lim. chap. 15.

The general authority of the directors of a corporation extends merely to the supervision and management of the company's ordinary or regular business.   Morawetz on Private Corp. sec. 512; 4 Am. & Eng. Ency. of Law, 207; Cook on Corporations, sec. 664, *et seq.;* Beach on Private Corp. sec. 421, *et seq.;* 1 Beach on Railways, sec. 525, *et seq.; Railway Co.* v. *Allerton,* 18 Wall. 233.

A contract with defendant which ignores and disregards the public when its interests, convenience or rights are involved, is against public policy, and void.   *Railroad Co.* v. *Mathers,* 71 Ill. 592, and 104 id. 257; *Williams* v. *Railroad Co.* 53 Iowa, 126; *Railroad Co.* v. *Taylor,* 6 Col. 1; *Railroad Co.* v. *Ryan,* 11 Kan. 602; *Marshall* v. *Railroad Co.* 64 Ill. 414; *Chicago Gas Light Co.* v. *People's Gas Light Co.* 121 id. 530; *Railroad Co.* v. *Mining Co.* 68 id. 489; *Doane* v. *Railway Co.* 51 Ill. App. 353; 9 Am. & Eng. Ency. of Law, 880.

It is our contention that such promise cannot be enforced, and that it is illegal.   *Railway Co.* v. *Shea,* 67 Iowa, 723; *Jacobs* v. *Tobiason,* 65 id. 247; 3 Am. & Eng. Ency. of Law, 878; 9 id. 880, *et seq.;* 19 id. 565, and notes; *Howard* v. *Church of Baltimore,* 18 Md. 451; *McGuire* v. *Smock,* 42 Ind. 97; *Brown* v. *Brown,* 34 Barb. 533; *Gray* v. *Hook,* 4 Comst. 449; *Pingry* v. *Washburn,* 1 Aiken, 264; *Cook* v. *Shipman,* 24 Ill. 614; *Marshall* v. *Railroad Co.* 16 How. 314; *Sedgwick* v. *Stanton,* 14 N. Y. 289; Wood on Master and Servant, (2d ed.) 439; Greenhood on Public Policy, rules 316, 320; *Wilhite* v. *Roberts,* 4 Dana, 353; *Smith* v. *Applegate,* 23 Zabr. 353; *Sharp* v. *Teese,* 4 Halst. 352; 2 Dillon, (3d ed.) secs. 458, 454.

If executory, such an agreement cannot be enforced. Green's Brice's Ultra Vires, 504, and citations.

The question involved is very similar to that decided in *C., M. & St. P. Ry. Co.* v. *Shea*, 67 Iowa, 723.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The allegations of the declaration are admitted by the demurrer to be true. The recitals in the instrument sued upon by the plaintiff must be assumed to be true as against him. The defendant, the Chicago City Railway Company, wanted to obtain from the city council of Chicago the authority to lay its street railway tracks on Wabash avenue in that city from Lake street to Madison street. By an act of the legislature approved February 14, 1859, entitled "An act to promote the construction of horse railways in the city of Chicago," under which the said railway company was incorporated for a term of twenty-five years, (which term was subsequently extended by "An act concerning horse railways in the city of Chicago," in force February 6, 1865,) said company was authorized to construct, maintain and operate a single or double track railway along such streets in said city within the south or west divisions thereof, as the common council of said city should authorize it to do, in such manner and upon such terms and conditions as said council might prescribe. (Private Laws of 1859, p. 530; Private Laws of 1865, p. 597).

Before applying to the common council for authority to lay its tracks upon that portion of Wabash avenue above designated, the company was obliged to obtain the consent in writing therefor of certain property owners along the line of the proposed tracks. The procurement of the consent of the property owners was made necessary by paragraph 90 of section 1 of article 5 of the City and Village act of 1872, which paragraph, as then in force, and before the subsequent amendments were made, is as follows: "The city council or board of trustees shall have no power to grant the use of, or the right to lay

down any railroad tracks in, any street of the city to any steam or horse railroad company, except upon a petition of the owners of the land representing more than one-half of the frontage of the street, or so much thereof as is sought to be used for railroad purposes." (1 Starr & Curtis, p. 472).

The appellant, Doane, owned an east frontage of four hundred feet on Wabash avenue between Lake street on the north and Randolph street on the south, together with a frontage of one hundred and fifty feet on each of said two last named streets. In order to get the consent of the owners of the land representing more than one-half of the required frontage of the street, it was necessary to have the consent of the appellant as the owner of said four hundred feet. The appellant gave his written consent to the laying down and construction of the proposed track, but the consideration for the giving of such written consent was an agreement by the company, that it would not thereafter build any other or more than a single track railway, without switch or switches, etc., along any part of Wabash avenue between Lake street and the north line of Madison street, except the necessary curves, etc., nor upon any part of Lake street between Wabash avenue and State street, except the necessary curves, etc., without first having obtained the consent therefor in writing of the appellant or his heirs, executors, administrators or assigns, with a provision that, in case of a violation of the agreement, the sum of $100,000.00 should become due to appellant, his heirs, etc., as liquidated damages. Substantially and in effect, the written consent of appellant to the laying down of a single track was procured by an agreement on the part of the company, that it would never in the future lay a double track without plaintiff's consent, or, if it did so, would forfeit $100,000.00. As was said by the learned circuit judge, in giving his reasons for sustaining the demurrer to the declaration: "Plaintiff's consent was the consid-

eration for the defendant's agreement, and the defendant's agreement was the consideration for the plaintiff's consent."

The question then arises, whether the consent of a property owner to the laying down of a street railway in the street upon which his property abuts, can be purchased for money, or for a consideration inuring to the exclusive benefit of such owner. We do not think, that it was the intention of the legislature, in the adoption of paragraph 90 as above quoted, to make the consent of the abutting owner in such cases a purchasable article. An agreement based upon the purchase of the abutting owner's consent to the laying of the proposed tracks in a public street is illegal as being against public policy, and will not be enforced by the courts. There are some very obvious considerations which justify this conclusion.

Such consent of the owner is manifested by his signature to a petition addressed to the common council of the city. Upon this petition the common council bases its legislative action. The provision of the statute embodied in paragraph 90 is a limitation upon the power of the council to grant the use of the streets to a street railway company. Unless there is a petition of those owning more than one-half of the frontage to be used, the council is without power to grant the license. (*McCartney* v. *Chicago and Evanston Railroad Co.* 112 Ill. 611; *Hunt* v. *Horse and Dummy Railway Co.* 121 id. 638). The city holds the fee of the streets in trust for the use of the public including the owners of property abutting thereon, and, consequently, the power to grant the use of the streets must be exercised for the benefit and in the interest of the public, including such owners. (*Hunt* v. *Horse and Dummy Railway Co. supra*). The city council would not be faithful to its trust, if it granted the use of a public street to a street railway company without being satisfied that such use of the street would be a public benefit by facilitating public travel and promoting the public conven-

ience. The law makes the petition of the abutting property owners evidence to some extent, that the public will be benefited by the proposed laying of the tracks. Such evidence, lying at the foundation of legislative action, must be fairly and honestly given, and not purchased by considerations moving to the signers of the petition.

An agreement on the part of a corporation to grant to individuals certain privileges, in consideration that they will withdraw their opposition to the passage of a legislative act touching the interests of the corporation, is against sound public policy, prejudicial to correct and just legislation, and void. (*Pingry* v. *Washburn*, 1 Aiken, (Vt.) 264; Greenhood on Public Policy, rules 316, 320). "Legislators should act from high considerations of public duty. Public policy and sound morality * * * require, that courts should put the stamp of their disapprobation on every act, and pronounce void every contract, the ultimate or probable tendency of which would be to sully the purity or mislead the judgments of those to whom the high trust of legislation is confided." (*Marshall* v. *Baltimore and Ohio Railroad Co.* 16 How. 314).

Contracts for the purchase of the influence of private persons upon the action of public officials, either executive or legislative, are against public policy and void. It is sufficient that their tendency is bad. (*Liness* v. *Hesing*, 44 Ill. 113; *Trist* v. *Child*, 21 Wall. 441; 3 Am. & Eng. Ency. of Law, pp. 877, 878, and notes; *Brown* v. *Brown*, 34 Barb. 533). Personal influence to be exercised over a legislative body is not vendible in our system of laws and morals. (*Oscanyan* v. *Arms Co.* 103 U. S. 261). If the appellee had made an agreement with appellant to pay him for using his influence with the common council of Chicago to induce that body to pass an ordinance permitting appellee to lay down its tracks in Wabash avenue, such contract would be conceded at once to be illegal, and no court would enforce it. We see no differ-

ence between it and the agreement made in the present case. The signing of the petition by the abutting property owner has a direct influence upon the action of the common council. An agreement to sign such a petition is an agreement to influence the common council, and, when made for a consideration moving to the property owner, is unlawful.

Where, by the statutes of a State and the ordinances of a city therein, the owners of a majority of feet fronting on a street, or the part of it proposed to be graded and paved, were required to unite in an application to the city commissioner to have the work done before any action could be taken by the city authorities, it was held as follows: "Any arrangement or combination among the parties applying whereby a few individuals, desirous of causing the grading and paving to be done, procure the signatures of others to the application by paying them a consideration therefor, either directly or indirectly, is a fraud on the law, and contrary to public policy." (*Howard* v. *First Independent Church of Baltimore,* 18 Md. 451).

In *Maguire* v. *Smock,* 42 Ind. 1, the action was upon an agreement to pay a consideration to procure the signatures of property owners to a petition for the improvement of a street under a law, which authorized the common council of the city to cause the improvement to be made on the petition of the resident owners of two-thirds of the whole line of lots bordering on the street, or part of street, sought to be improved, etc., and it was held, that the contract was one which the courts would not aid either party to enforce; the doctrine of the *Howard case,* as stated above, was quoted and approved; and it was said: "Their names were to be added to the petition to affect the action of the council. The council would be controlled to a considerable extent by the wishes of the property owners. * * * They (the council) would have a right to believe, that every prop-

erty owner petitioning for it * * * signed the petition in good faith, and not under a contract by which he was to be relieved of the whole, or any part, of his share of the cost of the improvement, whilst he was seeking to have others taxed for the whole amount of their share under the law."

In *Chicago, Milwaukee and St. Paul Railway Co.* v. *Shea*, 67 Iowa, 678, it was proposed that a township should aid in the construction of a railroad, and one of the members of the committee appointed by the town to work up the tax having entered into a contract with the railroad company, it was held that the tax voted was void by reason of a promise made by him to voters, that, if such aid was voted, they would be paid fifty cents on the dollar on their certificates when they paid such tax.

In *State, Kean, pros.* v. *City of Elizabeth*, 25 N. J. L. 351, under a statute providing that, where the common council determined to pave a street by the use of a patented process, and the owners of one-half of the property in running feet along the line of the intended improvement petitioned for the use of any specified patent, the contract must be awarded in accordance with the request of such proportion of owners, it appeared that some of the owners signed the petition for a consideration, and the court said: "Such purchased consent is against the policy of the law, and unjust to the other property owners. The fair judgment of the owners, and not their cupidity, must determine the question whether they and others shall be assessed."

A promissory note given by the applicants for a public road to a caveator against the road to buy off his opposition, and secure his assent to it, is void. (*Smith* v. *Applegate*, 3 Zabr. 352). Contracts between the officers of a railroad company and private parties to locate a railroad at a particular point, or to locate passenger and freight depots at a particular point and at no other point in a town, are void as being against public policy. (*Bestor* v.

*Wathen,* 60 Ill. 138 ; *Marsh* v. *Fairbury, Pontiac and North-western Railway Co.* 64 id. 414). So also are contracts, by which the directors of a railroad company agree to pro-hibit the establishment of depots or stations at certain points, or within specified distances of particular points, on the road. (*St. Louis, Jacksonville and Chicago Railroad Co.* v. *Mathers,* 71 Ill. 592, and 104 id. 257).

Authorities, holding that the purchase of signatures to petitions for the construction of public improvements, like the paving of streets, is against public policy, are said to be inapplicable in the case at bar, upon the al-leged ground that, there, the property owner, selling his signature, is relieved of his share of a burden which falls upon others not signing the petition or receiving any consideration, while, here, as it is insisted, the property owners not signing the petition are not subjected to any burden.

While it may be true, that the property owners not signing the petition are subjected to no tax or expendi-ture by reason of the laying down of the tracks in front of their property, it does not follow that they are not wronged when those signing the petition sell their con-sent. Counsel for appellant claim, that appellant's prop-erty would be damaged by the laying of the tracks, and that he had a right to demand compensation for such damage as a consideration for giving his consent to the laying of the tracks. On the other hand, counsel for appellee contends, that a street surface passenger rail-way, constructed at grade in the usual manner, is not a nuisance, or a new servitude imposed upon the street, for which the abutting owners suffer damage, and that, as they suffer no damage, they are entitled to no com-pensation. We do not deem it necessary to pass upon these contentions. It is certainly true, that the owner of property abutting upon a street, the fee of which is in the city, has the right of ingress and egress to and from his premises by means of the street. This right is

an interest in the street appurtenant to his property, which is distinct from the interest of the general public in the street. But if the property owners signing the petition have any interest whatever, either by reason of damage suffered or because of their right of ingress and egress, for which they are entitled to demand a price in consideration of giving their consent to the laying of the tracks, it is an injustice to the property owners not signing the petition to be deprived of an opportunity also of receiving such price. They are deprived of such opportunity, if appellant's claim, that the consent may be purchased, is well founded. The law only requires a petition from the owners of the land representing more than one-half of the frontage; and, if the corporation can buy the consent of those embraced in this proportion, it will have no interest in buying the consent of those not embraced in it. It results, that the latter are deprived of what their neighbors are fortunate enough to receive. We cannot believe, that it was the intention of the law to thus discriminate between the abutting property own-ers. If the consent of one is purchasable, the consent of all is purchasable, and, if the consent of all is pur-chasable, a system under which some are necessarily deprived of any opportunity to sell, is wrong and unjust. The only legitimate conclusion is, that the consent of none should be made a matter of barter.

But aside from any question of damage, it is true that not only the abutting property owners signing the peti-tion, but those not signing it, and also the general public, are interested in the improvement. In *McCartney* v. *Chicago and Evanston Railroad Co. supra*, we said in reference to paragraph 90 (p. 639): "It is not the city alone, or abutting property owners, that are concerned about the unlawful obstruction of a street of a city. All the people of the State are entitled to the use of such street as being a public highway." Consequently, the abutting property owners, who sign the petition and thus put in motion the

legislative action of the common council, are to a certain extent charged with a duty to the public. As the rights of third persons and of the general public are thus affected by the action of the property owners who sign the petition, they have no right to sell their signatures thereto. Public policy requires the unbiased and uninfluenced judgment of such signers. (*Smith* v. *Applegate*, 3 Zabr. 352; *Dean* v. *Clark*, 30 N. Y. Sup. 45; 19 Am. & Eng. Ency. of Law, 565; 9 id. 880). This doctrine is admirably illustrated in the case of *Jacobs* v. *Tobiason*, 65 Iowa, 245, where an agreement to abandon the prosecution of a proceeding for the establishment of a public highway, in consideration of money to be paid for such abandonment, was held to be against public policy, and void in law, and not enforcible, and where the Supreme Court of Iowa said: "Proceedings for the establishment of public highways are essentially public in their character.  *  *  * The proceeding can be instituted, it is true, only on the petition of some member of the public who is interested in the question.  *  *  * In instituting and carrying on the proceeding he acts, in a sense, in a public capacity. He invokes the power of the State, and it is exercised for the benefit of the common public, and he, in a sense, represents that public, and stands for it in the proceeding. It is true, he cannot be compelled to institute the proceeding, and it may be true, also, that, having voluntarily begun it, he cannot be compelled to continue it to a final result.  *  *  * But when he has assumed a position of trust towards the public, and instituted a proceeding of public concern, he cannot be permitted to make the question, whether he will remain in the position or continue the proceeding, a matter of private bargain for his own emolument."

We cannot make an extended review of the cases referred to by counsel for appellant. Those most relied upon are *Low* v. *Railroad Co.* 46 N. H. 284, *White* v. *M. Ry. Co.* 139 N. Y. 19, and *Weeks* v. *Lippincott*, 42 Pa. St. 474.

The New Hampshire case seems to be based mainly upon English decisions, whose authority upon this subject is generally repudiated in this country. (1 Wharton on Contracts, sec. 402, note 1; Green's Brice's Ultra Vires, p. 504, note). The New York case is essentially different in its facts from the case at bar, and the main question there involved was, whether an abutting owner, who had consented to the erection of an elevated railroad in front of his property, was thereby estopped from subsequently suing for damages. The Pennsylvania case is more directly in line with appellant's contention, but it is opposed to the current of authority, and we regard the authorities already noticed as announcing the sounder doctrine.

But it is urged, on behalf of appellant, that the consideration of the bond or agreement sued upon was not only the laying of a single track in front of appellant's property at the date of the execution of the instrument, but it was also in part that, in case another track should be laid, a definite sum was agreed to be paid. Only a single track was laid down in 1881 between Madison and Lake streets and in front of appellant's property, which property was between Randolph street on the south and Lake street on the north. In 1892 another track was laid, but not in front of appellant's property. The second track, though between Madison and Lake streets, was not between Randolph and Lake streets, but between Randolph and Washington streets. It was, therefore, south of appellant's property. It is the laying of this second track which is assigned as a breach of the bond. The agreement of the company, that it would not thereafter lay a second track without appellant's consent, was clearly invalid; the company had no right to bind itself, that it would not do in the future what might be required of it by its duty to the public under the provisions of its charter. It is averred in the declaration, that a second track was laid in 1892 south of Randolph street; and the presumption is, that it was laid by authority of the com-

mon council, based upon a petition signed by the owners representing more than one-half of the required frontage of the street. If, under the agreement, the company could not lay a second track without appellant's consent, then the petition therefor of the requisite proportion of owners, and an ordinance of the common council authorizing it, would be of no avail to secure the laying of such second track. In such case, appellant's veto would be more powerful than the public demand, as made known by the petition and ordinance provided for in the law. An agreement by a corporation, which thus hampers its power to perform a public duty imposed upon it by its charter, is against public policy and void. A contract, whereby a corporation abandons a public duty, will not be enforced. Where a railroad company, or a street railway company, has, under its charter, a franchise, which was intended, in large measure, to be exercised for the public good, any contract with an individual or private corporation, which disables it from the exercise of such franchise, or limits it in the exercise thereof to the injury of the public, is void as against public policy. (*Chicago Gas Light and Coke Co.* v. *People's Gas Light Co.* 121 Ill. 530, and cases there referred to; *Marsh* v. *Railroad Co. supra; Railroad Co.* v. *Mathers, supra; State* v. *Railroad Co.* 29 Conn. 538; *Railroad Co.* v. *Railroad Co.* 3 Robertson, 411; *Railroad Co.* v. *Taylor*, 6 Col. 1).

A further contention by appellant is, that the amount named in the bond was agreed upon by the parties as liquidated damages, while appellee claims that the amount was a mere penalty. It is unnecessary to determine whether the bond provides for a penalty or for liquidated damages, as the views already expressed dispose of the material question involved, and justify the action of the trial court in sustaining the demurrer to the declaration.

The judgments of the Appellate and circuit courts are affirmed.                                    *Judgment affirmed.*