## John Farson et al. v. Simon F. Fogg et al.

1. FRANCHISE—*Agreement of Street Railroad Company to Pave Street in Return for Consent of Abutting Owners to Construction of Road is Legal.*—An agreement of a street railroad company to cut, grade, curb, macadam and build the cross-walks in a street in consideration of the consent of the owners of abutting property to the construction of a line of street railroad in such street, is legal, and is not a purchase of frontage consent for a consideration inuring to the exclusive benefit of any such owner.

**Bill for Specific Performance.**—Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Affirmed. Opinion filed January 30, 1903.

Appellants' counsel assert that the bill of complaint in this case was exhibited to collect a penalty; whereas, appellees' counsel contend that its purpose was to compel the paving of Cheltenham Place, Chicago, or "if the court should deem it equitable, in view of the case, then to have a certain check held in escrow delivered up, and defendants Farson and Leach, by whom it was certified, compelled to pay it as per agreement."

It appears that complainants Fogg and Kinney were the owners of a tract of land fronting on Cheltenham Place and Bond avenue, upon which streets the Calumet Electric Street Railway Company was seeking a franchise to enable it to lay its tracks. To obtain such franchise for Cheltenham Place the consent of appellees was indispensable. The latter were opposed to laying the tracks on this particular street, believing, it is said, that it would be injurious to property there. As the result of negotiations with appellant Arthur B. Leach, a verbal agreement was made in accordance with which the railway company was to pave the street from Bond avenue to the east side of Lake avenue as a condition of the withdrawal of appellees' opposition. There is testimony tending to show that this proposition was made by appellants, and that appellant Leach said he would put up a certified check for $1,000 to guar-

antee the performance of the agreement, and to this Fogg, for himself and Kinney, agreed. Thereafter a contract in writing was drawn up, which was executed by appellees, and after their signatures appears the following : " The Calumet Electric Street Railway Company for value received hereby acknowledges that it has agreed to do said work according to said specifications as in the foregoing memorandum is stated and upon the conditions therein recited. (Signed) Calumet Electric Street Railway Co. John Farson, Gen. Manager." The railway has since gone into the hands of a receiver.

The written contract recites that the railway company has made application for a franchise or a license to build a one or two track electric railway on Cheltenham Place, and has agreed with appellants, who are the owners of property described, " to cut, grade, curb, macadam and build the cross-walks in said Cheltenham Place from curb to curb from said Bond avenue " to a point 480 feet east, according to specifications attached, " in consideration for and in full payment of the damages which said Fogg and Kinney will incur in connection with and by reason of the construction of said railway on Cheltenham Place, if the said corporation shall secure said ordinance, and that the undersigned, Farson, Leach & Co., being interested in said corporation and in the securing of said franchise and the construction of said road, to secure the faithful performance of said agreement by said corporation  *  *  *  if it shall secure said franchise in the meantime, have placed their certified check for $1,000, drawn upon the National Bank of Illinois, and made payable to William A. Hammond, vice-president, as trustee, to secure the faithful performance of said agreement." It is then provided that if the corporation shall pave the street as agreed, or if it shall not secure the franchise or license and shall withdraw its application therefor and return the petition, " then said check shall be returned to said Farson, Leach & Co. If said corporation has acquired  *  *  *  said franchise or license, and neither it nor the said Farson, Leach & Co.

has completed said work according to said specifications, said check shall thereupon be indorsed by said Hammond or his successor as vice-president of said bank, and delivered to said Fogg and Kinney by said Hammond or his successor, and said bank shall pay the same to said Fogg and Kinney upon said indorsement when made by said Hammond or his said successor, and said Fogg and Kinney shall have and hold said sum of $1,000 as and for liquidated damages for the failure of said corporation or said Farson, Leach & Co., to do said work." The check was subsequently drawn on Farson, Leach & Co. by the defendant Fuller, acting as attorney for said bankers and the railway company, was certified, and deposited in escrow as agreed.

Upon the hearing there was a reference to a master, who found the complainants entitled to receive payment of the check. The court approved the finding and entered a decree accordingly for the amount of the check and interest. From that decree comes this appeal.

JUDSON F. GOING, attorney for appellants; DANIEL V. GALLERY, of counsel.

ALEXANDER S. BRADLEY, attorney for appellees.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is said by appellants' counsel that the contract, the material parts of which are above stated, " is a contract made to conceal an oral agreement in violation of public policy." It is contended that the consideration of the contract in question was the sale of frontage consents to the railway company; that it was an attempt to do indirectly what can not be done directly, and that it is void because against public policy. What the consideration was is mainly a question of fact, upon which there is some apparent contradiction in testimony between Fogg and Leach, but which the master has settled against appellants. Fogg testifies that Leach " made the proposition to pave Cheltenham Place, if I would give my consent to this railroad going

around this corner; I accepted that proposition, provided I could be guaranteed that the pavement would be made, and he proposed to put a certified check for $1,000 up in escrow for the performance of that agreement; that is the exact facts and that is the trade." Leach does not contradict this, except as he says he told Fogg that without his frontage it would be impossible for the Calumet Railroad to run through Cheltenham Place, " and I made arrangements with him to pay him so much for that frontage. The amount to be paid was $1,000, on the terms that he was to sign for us and not for the other company."

It is conceded that the railway company secured its franchise from the city and has laid its tracks upon the street. Appellants and the corporation have the fruits of the contract, but desire to be released on their part from payment of conceded damages in compliance with its terms. What is said in Jackson v. Horton, 126 Ill. 566–576, is fairly applicable to this state of facts. " In return for these advantages he (it) has parted with nothing. · Surely it is not equitable that one party to an agreement of settlement should reap all the benefits and that the other party should receive no benefit whatever."

What the contract was, must be obtained from the written instrument. By its terms, it is what appellee Fogg in his testimony above quoted states, an agreement on the part of the company to pave the street " in consideration for and full payment of the damages which said Fogg and Kinney will incur in connection with, and by reason of, the construction of said railway on said Cheltenham Place if the said corporation shall secure said ordinance." The existence of any corrupt agreement is denied by appellees, and if any such agreement was in mind or spoken of between the parties they have not stated it in the written instrument, which embodies their final agreement. The master finds from the evidence that said agreement was made " to protect and satisfy complainants as to the damages which complainants claimed would accrue to their said property by the construction of said line of railway." This finding

appears to be justified by the evidence, and we find no good reason for questioning its correctness. No suspicion would probably attach to the contract, were it not for the fact that the appellants could not obtain the franchise without the consent of appellees, the owner of the frontage, and that the purchase by appellants of a frontage consent from appellees would be illegal. Doane v. Chicago City Railway Co., 160 Ill. 22–31. In that case it is said that " an agreement based upon the purchase of the abutting owner's consent to the laying of the proposed tracks in a public street is illegal as being against public policy and will not be enforced by the courts." If the contract in controversy was such an agreement, there would be an end to the case. But such is not its meaning as therein expressed. In the Doane case, *supra*, the court states the point decided thus: " The question then arises whether the consent of a property owner to the laying of a street railway in the street upon which his property abuts, can be purchased for money, or for a consideration inuring to the exclusive benefit of such owner." The contract here under consideration does not purport to be and evidently was not for the exclusive benefit of such owner, if carried out according to its terms. It was for the public benefit that the street should be paved, and other property owners as well as appellees would be compensated by such paving to that extent for such damages as the construction and operation of the railroad might involve. We are not aware of any considerations of public policy which forbade the railway company from making good to the public and the property owners damages which are occasioned by its appropriation of a part of the street for its tracks and cars. Such provisions are frequently inserted in ordinances by which franchises are granted, with a requirement that as a condition the company shall pave the street upon which it is permitted to place its tracks. This is ordinarily a just and equitable provision. The fact that a street railway imposes no additional servitude upon a public street does not by any means compel the conclusion that it may not in fact inflict dam-

age upon the public as well as upon the private owners of abutting property, which it is equitable to require the railway company to lessen as much as possible by improvement of the street in a compensatory way.

It is insisted, however. that, if the contract was made in good faith, the payment of $1,000, though called "liquidated damages" in the writing, is in fact a penalty, and that only such damages can be recovered as shall be shown by evidence to have been suffered by the failure to perform promptly at the time set.   The contract recites, as above stated, that the agreement to pave is made " in consideration for and in full payment of the damages which said Fogg and Kinney will incur in connection with and by reason of said railway on said Cheltenham Place, if the said corporation shall secure said ordinance." It then recites, that " to secure the faithful performance of said agreement by said corporation on or before September 1, 1896, if it (the corporation) shall secure said franchise in the meantime," Farson, Leach & Co. have put up their certified check, to be paid to appellees if the paving is not done as agreed, said Fogg and Kinney to " have and hold said sum of $1,000 as and for liquidated damages for the failure of said corporation, or said Farson, Leach & Co., to do said work." The tracks were laid in Cheltenham Place in June, 1896, and it was not until December following, when it became apparent the contract for paving was not to be complied with, that appellees demanded the check.   The substance of the agreement is that appellees will be damaged by the railway on Cheltenham Place; that in consideration for and payment of such damages the corporation or appellants will pave the street; that if they fail to do so they will pay $1,000 as liquidated damages caused by such failure.   It is true the fact that a sum to be paid is called liquidated damages by the parties does not always control. Courts will look to the nature and purpose of the agreement.   Scofield v. Tompkins, 95 Ill. 190.   In the case before us, appellants recognized and conceded that the railway would damage appellees' property unless it was offset

by paving the street, and failing to do this they agreed in lieu thereof to pay the thousand dollars as an equivalent for the loss of the benefit to be derived from the paving. The contract bound appellants or the corporation to take the necessary steps to obtain the city's permission and to provide and to pay the expense of a public improvement which they conceded was needed to offset the damage they proposed to inflict by their use of the street. They have obtained the benefit they desired, and have inflicted the damage which they anticipated. They are getting off now by paying an equivalent to only one of the property owners damaged. We find in this transaction no real ground for regarding the payment as a penalty for the prompt performance of the agreement. It is true a limit of time was fixed within which the work was to be done. But the parties agreed that the payment was to be for damages, and the facts in evidence seem to have warranted such an agreement. The agreement settled the amount of damages which might otherwise be uncertain, and no good reason appears in this case for holding that to be a penalty which the parties have said was an equivalent for damages inflicted. The check operated as an equitable assignment of the fund, and transferred the title thereto to appellees under the conditions of the agreement. National Bank of America v. Nat. Bank of Illinois, 164 Ill. 503; Wyman v. Fort Dearborn Nat. Bank, 181 Ill. 279–283.

It is said the decree is incomplete and fails to settle all the equities. So far as the parties to the litigation are concerned, it disposes of the questions involved. Appellants were clearly actual parties to the agreement, notwithstanding the manner in which it is signed. The check as eventually made was drawn on Farson, Leach & Co., bankers, and by them certified. No reason appears why they should not pay it. Finding no material error in the record the judgment of the Circuit Court must be affirmed.