# Nall, et al. v. Thomas, Drainage Commissioner, et al.

## Same v. Spicer, Sheriff, et al.

(Decided June 22, 1928.)

(As Modified on Denial of Rehearing, October 26, 1928.)

### Appeals from McLean Circuit Court.

1. Drains.—Landowners, who in drainage proceeding failed to interpose objections to changes in plans whereby certain branches were not constructed, cannot complain of such changes in action against drainage commissioner for new trial after withdrawal of exceptions.

2. Drains.—Property cannot be assessed for more than its just share of burden of constructing drainage ditch, since principle of uniformity governs levying of assessments, notwithstanding general rule that special assessments for local improvements are not "taxes," within constitutional provision that taxation shall be equal and uniform.

3. Drains.—Landowner's contract to pay drainage district tax in limited amount and in installments without interest, instead of in manner provided by Ky. Stats., secs. 2380-32, 2380-34, held invalid, especially where made before establishment of ditch, when questions which court must settle under section 2380-3 were still open.

4. Appeal and Error.—Where judgment of lower court accomplished correct result, it will be affirmed, notwithstanding that reviewing court reached conclusion that relief should be denied for different reason.

T. F. BIRKHEAD and J. E. ROWE for appellants.

JOE H. MILLER and R. ALEXANDER for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

Appellants here were unsuccessful as plaintiffs in the trial court. In August, 1915, Sam Ferguson filed in the McLean county court, under Kentucky Statutes, sec. 2380 et seq., a petition for the establishment of a drainage district and the construction of a drainage canal, now known as Sam Ferguson drainage project No. 11.

The petition and the viewers' preliminary report were both oft amended, and the district much extended. The appellants had filed exceptions, but, on May 18, 1922, they withdrew them, and the drainage district was established. The viewers made their final report, it was confirmed, the contract for the construction of the ditch was signed, the assessment roll was made up, confirmed, as-

sessments were made to pay for the ditch, and the tax due thereon placed in the hands of the sheriff for collection.

Thereafter, in September, 1925, the appellants here filed this action in the McLean county court against J. H. Thomas, drainage commissioner, seeking a new trial, alleging that, when they withdrew their exceptions, it was upon an agreement that the proposed improvement should not cost these appellants exceeding $12.50 per acre, which they should have ten years in which to pay, without interest. The drainage commissioner traversed the petition, and alleged the agreement under which appellants withdrew their exceptions was:

"Exceptors will withdraw the exceptions filed by them herein and consent to the establishment of the drainage district herein proposed, under the following terms and conditions:

"1.   That, if the assessment for the construction of said district against the lands therein now owned by said exceptors shall exceed an average of $12.50 per acre based on the total acreage now owned by said exceptors, the said exceptors shall at the proper time and in the regular way file their exceptions to such assessment, and that said petitioners will, to the extent they are authorized by law so to do, confess such exceptions to such an extent as that the assessment against the lands in said district now owned by said exceptors shall not exceed an average of $12.50 per acre, based on the total acreage of lands in said district now owned by exceptors.

"2.   The exceptors do not waive any right they now have by law to object to the classification of and the assessment made against the said lands in said district now owned by them.

"3.   The petitioners and their attorneys will use such influence they may be able to do to cause this agreement to be carried out in spirit by such parties hereto as they are now authorized to speak for or represent herein."

The drainage commissioner alleged this agreement had been fully kept. The appellants then amended their petition, and alleged:

"The blue prints, maps, and report of the engineer in said action showed that there was to be

constructed as a part of the drainage system in said action, arms and branches to the main ditch, and that these arms and branches and some of them went through or along these plaintiffs' farms, and materially added to the benefits that might be derived by the construction of said ditch and these arms and branches, and that, since said agreement set out in the petition was made, they are informed and charge the fact to be that the defendants and drainage commissioner and engineer have cut out these arms, and do not intend to construct said arms to said ditch, and this will materially affect the plaintiffs' property, and lessen materially the benefits that their lands would receive by the construction of said ditch and arms and branches; that they made the agreement set out in the original petition with the distinct understanding that said arms and branches were to be constructed to the main ditch, and now said arms and branches have been cut out, and their lands, and the lands of each of them, will not receive one-half of the benefit it would have received if said arms and branches originally specified and called for were constructed.''

The drainage commissioner traversed this. The appellants by reply denied that the agreement we have copied above constituted the whole agreement made with them when they withdrew their exceptions. The drainage commissioner by amended answer attacked both the agreement he says was made and the one appellants contend was made as contrary to public policy, and void. Further pleadings were only elaborations of these. In October, 1926, appellants filed in the McLean county court a petition in equity against W. F. Spicer, the sheriff, reciting therein the pendency of their action for a new trial, reiterating in it what they had said in their action for a new trial, and seeking to enjoin him from collecting the ditch tax levied on their lands. In a few days this was consolidated with the case against the drainage commissioners. Appellants were permitted to file exceptions to the classifications of their land, and evidence thereon as well as on the subject of this agreement was heard. Over 200 pages of evidence were introduced by the appellants, and over 150 pages by the drainage commissioner. The record in the original drainage proceeding was also filed and made a part of the record

in this action. The county court dismissed the plaintiffs' petition, and they appealed to the circuit court, where the plaintiffs were permitted to again amend their petition, and the circuit court, having considered the matter upon the pleadings, exhibits, depositions, etc., dismissed the plaintiffs' petition again, and they have now brought the matter here.

The contention of the appellants is that they were induced to withdraw their exceptions by an agreement that: (a) The lands of the appellants should not be assessed at exceeding $12.50 per acre; (b) that they should have the right to pay this in 10 annual installments without interest; (c) that in the construction of this ditch there should be constructed three arms or branches to arm 13, and one arm or branch to arm 15.

These arms or branches were not constructed, and the appellants by evidence showed that to clear the way for and cut these now would cost this:

| | |
|---|---:|
| Arm No. 1 to arm 13 | $ 495.92 |
| Arm No. 2 to arm 13 | 1,169.08 |
| Arm No. 3 to arm 13 | 4,036.84 |
| Arm No. 1 to arm 15 | 1,252.22 |
| Total | $6,954.06 |

They contend, and it is doubtless true, this drainage project would have been much more valuable to their lands with these arms constructed, and they insist it is of little or no value without them. The drainage commissioner demurred to the petition of the appellants, and now urges this demurrer should have been sustained, first, because, as he says, the contract appellants contend was made was against public policy, and void; second, because the appellants were then before the court in this original proceeding, and could, by proper objections seasonably made in the original case, have prevented, or at least could have attempted to prevent, the change in these plans by which the construction of the proposed arms was omitted. The appellants did nothing. They sat by, and now, after the establishment of the district and the levy of the taxes to pay for the construction of the ditch, they cannot, according to the contention of the drainage commissioner, raise questions which they could have raised during the progress of the litigation by which this district was established and these assessments were made. The position taken by the drainage commissioner is sound. These parties have had their day in court.

They had their opportunity to interpose objections to the changes in the plans. They did nothing, and cannot now be heard to complain of what happened.

Moreover, the contract which these appellants claim to have made is one that does not appeal to the courts and which we are persuaded ought not to be enforced. It was made at the initial stage of this proceeding. It was made before any assessment was made against the property of any one living along this ditch, for its construction; before any one even knew what sort of a ditch would be constructed, what the cost of it would be, or even its exact location. All that was known then was that it was proposed to construct a ditch through this wet land for the purpose of draining it. The court had not at that time determined that the ditch should be constructed, that the project was practicable, that the route was the proper one, that the ditch would benefit the public health —in fact, the court had done nothing more than to appoint viewers who had made a preliminary report, and, with the proceedings at that stage, the appellants claim they then made a contract by which it was provided that in no event should the assessment against their land exceed $12.50 per acre, and that they should be permitted to pay this assessment in 10 annual installments, without interest.

"It is the well-settled general rule that special assessments for local improvements are not taxes within the meaning of the constitutional provision that taxation shall be equal and uniform throughout the state, county, or municipality laying the tax . . . It has frequently been held, however, that the principle of uniformity governs the levying of assessments, and that no tax of any kind can be sustained when it appears that the several parcels of property chargeable with the tax are made to bear unequally the burden thereof." 25 R. C. L. p. 90, sec. 7.

Thus the property belonging to the appellants could not be assessed for more than its just share of the burden of constructing this ditch, nor can appellants contract to get the benefit of the ditch and to secure for their property an exemption from assessment for its just share of the cost of the ditch. We fully realize that it is perhaps impossible to construct a ditch of this character and distribute the cost in absolute and exact proportion to the benefits derived. Such a result, however desirable, is

often unattainable; but that does not make any less illegal a contract providing for inequality before the work is undertaken. We may never accomplish the ideal, and contracts do not become illegal so long as there is no open effort to prevent that accomplishment; but when parties actively and openly endeavor, by contracts such as this, to limit the assessments that can be made against their property, such contract cannot be upheld.

"While the constitutional principle of uniformity is not in its strictest sense applicable to a local assessment, yet the rule of apportionment, whether by the front foot or a percentage upon the assessed valuation, must be uniform, affecting all the property liable for a local improvement." 25 R. C. L. p. 133, sec. 48.

In the case of City of Lexington v. McQuillan's Heirs, 39 Ky. (9 Dana) 513, 35 Am. Dec. 159, we said:

"Although there may be a discrimination in the subjects of taxation, still persons in the same class, and property of the same kind, must generally be subjected alike to the same common burden. This alone is taxation, according to our notion of constitutional taxation in Kentucky."

In that case, a property owner was complaining of an unjustly large burden imposed upon his property for street improvement, but the same principle that actuated this court in relieving McQuillan's heirs from the unjust burden imposed upon their property for street improvement compels us to refuse to enforce a contract by which the appellants in this case sought to provide that the burden upon their property for the construction of this improvement should not exceed $12.50 per acre, for it must be observed that, if this contract were enforceable, that would be the extent of the assessment that could be made against their property, no matter how great might be the benefit to it.

In addition to the vice in this contract already pointed out, it had another evil tendency. The court had not at that time established this ditch. The questions which the court must settle and determine under section 2380-3, Kentucky Statutes, were still open. The appellants and some others had filed exceptions to the commissioners' report. They were contending that the ditch was not practicable, that the cost would be prohibitive,

and that it would not benefit the public health, comfort, convenience, roads, or welfare. These were the questions the court was called upon to determine. Some 35 different people had filed exceptions. There were over 500 defendants in the litigation, and nearly 150 plaintiffs. Among the defendants were more than 30 nonresidents. We have counted 28 infant defendants, of whom 11 were more than 14 years of age and 17 were less, and two were lunatics. This record discloses that just a few men were actively pushing this project. A still smaller number had filed exceptions and were actively opposing it. The vast majority of the parties to the litigation were taking no active interest, but were merely passively waiting for the court to act, and, as we have seen, there were quite a number under such disabilities they could not take a position. These proceedings were at that time, as disclosed by this record, in such a state as to make the following very applicable:

> "Other agreements which have been condemned by a majority of the courts are those involving a promise by some of the abutting owners along a street to induce other abutting owners to sign a petition for its improvement. It has been pointed out that the municipal council would be controlled to a considerable extent by the wishes of the property owners. The nearer they approached to unanimity in favor of the work the more likely the council would be to order it to be done. It has accordingly been declared that any arrangement or combination among the parties applying, whereby a few individuals, desirous of causing the grading and paving to be done, procured the signatures of others to the application by paying them a consideration therefor, either directly or indirectly, is a fraud in the law, and contrary to public policy." 6 R. C. L. p. 745, sec. 150.

By this contract upon which appellants are relying, practically all of these exceptors withdrew their exceptions to the establishment of the ditch. Such action cannot fail to have had an influence on the court, which was then charged with the important duty of determining questions which section 2380-3 requires must be determined before the ditch is established. A similar question was before the superior court in this state in the case of Miller v. Rice, and this is taken from an abstract of

that opinion which is published in 9 Ky. Law Rep. at page 620:

"An act of the Legislature authorized the Boone county court when requested thereunto by a petition signed by a majority of the owners of land in a certain road district, to have a turnpike laid out and constructed, and to levy a tax to pay for its construction. To induce H., a taxpayer, to sign a petition afterward presented to the county judge and acted upon by him pursuant to the provisions of the act, the persons who presented the petition agreed with H., that if the tax should be imposed they would pay all the tax which might be levied upon his property in excess of a certain amount. The tax having been imposed, two of the four persons who thus contracted with H. paid his tax as agreed, and now sue their co-obligors to recover one-half the amount thus paid. Held—That the contract was based upon an illegal consideration and cannot be enforced. It was wrong to all the taxpayers of the district for any one to sign the petition for a valuable consideration."

Similar agreements have frequently been held void. See Doane v. Chicago City Ry. Co., 160 Ill. 22, 45 N. E. 507, 35 L. R. A. 588; Howard v. First Independent Church of Baltimore, 18 Md. 451; Maguire v. Smock, 42 Ind. 1, 13 Am. Rep. 353; Smith v. Applegate, 23 N. J. Law, 352. See, also, 13 C. J. 436, sec. 372, and Walsh v. Hibberd, 122 Md. 168, 89 A. 396, 50 L. R. A. (N. S.) 396. There is no difference in principle between paying a man to sign a petition as cited, and contracting with exceptors to withdraw their exceptions in consideration of an agreement to limit the amount that could be assessed against their property.

There is no difference in principle between paying a man to sign a petition as cited, and contracting with exceptors to withdraw their exceptions in consideration of an agreement to limit the amount that could be assessed against their property.

We are not now deciding that a man who has a bona fide controversy about the class in which his land has been placed, or about the assessment made upon that particular class, may not agree with his adversaries upon an adjustment of the difference. That is not the question that we have before us. The question that we have is: Can parties to a drainage proceeding, in advance of the establishment of the ditch, contract with other parties

interested in the construction of the ditch, and by that contract provide that the assessment against their property shall never exceed $12.50 per acre, which they may pay, not in the manner provided by section 2380-32 and section 2380-34 of Ky. Stats., but in 10 equal installments, and those without interest, and that, in consideration of that concession to them, they will withdraw their exceptions and permit the ditch to be established. The answer is: "No."

Every dollar of tax burden which the construction of this ditch will entail must be borne by some one; every dollar that the appellants escape is thrust onto some one else, and all this is done regardless of the benefit received. That is not the policy of the law. If these men had succeeded in proving things they had alleged in their exceptions filed, this ditch might never have been constructed. The public, especially the helpless public, these infants, these lunatics, are interested in having both sides of this controversy presented to the court before this ditch is established. The public is as much interested in having the ditch opposed as in having it proposed, for, if this ditch be not a practicable thing, the burden of its construction should not be thrust upon these people, and it was illegal by this contract to purchase the withdrawal of these exceptions. This contract being illegal, no rights could be acquired under it, courts should not enforce it, and the demurrer should have been sustained to the petition founded upon it.

However, the judgment accomplished the same thing. It denied to the appellants the relief they were seeking, dismissed their petition, and, though we have reached the conclusion that that relief should be denied for a different reason, yet, since the result is the same, the judgment is affirmed.