MONTCLAIR MILITARY ACADEMY v. NORTH JERSEY STREET RAILWAY COMPANY.

Submitted July 6, 1900—Decided November 12, 1900.

1. The owner of lands fronting on a public street has *prima facie* a property right in fee to the middle of the street, subject to the public easement, and another property right in the whole street by way of an easement of the right of way.

2. The use of a public street by the location and use of it by electric cars may be injurious to the property of an abutting owner.

3. The statutory consent of such an abutting owner to the construction, operation and maintenance of a street railway on the highway in front of his premises need not be influenced by the consideration whether or not such a use of the street was promotive of public policy. That question is lodged by the legislature with the municipal authorities. The privilege conferred by the statute upon the owners of lands fronting on the street on which a street railroad is proposed to be built, to give or withhold their consent, is conferred upon them solely for the protection of their own property rights.

4. By statute (*Pamph. L.* 1894, *p.* 374) it was enacted that no railroad should. be constructed in, over and upon any street, avenue, highway, land or other public place in any municipality, town, township, village or borough of this state, except upon the consent of the governing body of such municipality, which consent should only be granted upon a petition of the corporation and after public notice and a hearing before the governing body, and that the governing body might grant or refuse permission to construct, maintain and operate such street railroad, or in their discretion might consent to the construction, &c., of such street railroad, &c., defining the location, &c., with a proviso that such petition for the designation of the route, construction, maintenance or operation of a street railway should not be granted until there be filed with the clerk of such municipality, &c., the consent in writing of the owner or owners of at least one-half in amount in lineal feet of property fronting on such street, &c. The plaintiff was the owner of lands fronting on a street in the town of M., in which the defendant proposed to locate its railroad. He signed a consent wherein the defendant agreed with the plaintiff as the price and consideration for said consent, to sell or procure to be sold to the said plaintiff $10,000 of the bonds of the defendant then issued or to be issued, and $20,000 of the shares of its capital stock. In an action brought against the company for the non-performance of its agreement it was *held*—

(1) That the consideration of this consent was not void as against public policy in its tendency to influence legislation; and

(2) That this agreement was not illegal, on the ground that such consent given by an individual was a fraud on other landowners and on the public.

On demurrer to declaration.

The plaintiff's declaration contains three counts. To the first and second counts the defendant pleaded issuably.

The demurrer is to the third count, and to this demurrer the plaintiff filed a joinder.

Before DEPUE, CHIEF JUSTICE, and Justices GUMMERE and FORT.

For the plaintiff, *Washington B. Williams.*

For the defendant, *Coult & Howell.*

The opinion of the court was delivered by

DEPUE, CHIEF JUSTICE.   The defendant was incorporated for the purpose of constructing, operating and maintaining street railroads.   By the act of 1894 (*Pamph. L., p.* 374; *Gen. Stat., p.* 3247) it was enacted that no railroad should be constructed in, over and upon any street, avenue, highway, land or other public place in any municipality, town, township, village or borough of this state except upon the consent of the governing body of such municipality, town, township, village or borough, which consent should only be granted upon a petition of the corporation and after public notice and a hearing before the governing body, and that the governing body might grant or refuse permission to construct, maintain and operate such street railroad as prayed for in said petition, or in their discretion might consent to the construction, maintenance and operation of such street railway upon part of the streets, highways or public places designated in such petition, and refuse permission to construct, maintain or operate said street railway upon the remainder of such streets or public places, and that the location thus granted by the governing body of such municipality, &c., should be the true location of the tracks of said street railway, &c., with a proviso that such petition for the designation of route, construction, maintenance or operation of a street railway company should not be granted by the governing body of any municipality, &c., until there be filed with the clerk of such municipality, &c., the consent in writing of the owner or owners of at least one-half in amount in lineal feet of property fronting on such street, highway, avenue or other public place, or upon the part of such street, highway, avenue or other public place through which permission to construct, operate and maintain a street railway is asked.

In the count demurred to the material allegations are these—*first,* that the defendant agreed with the plaintiff for certain grants, consents or licenses for an easement or privilege to construct and maintain an electric street railway on and in front of certain lands of the plaintiff in Montclair, and also on and in front of certain adjoining lands, contracted for and controlled by the plaintiff, in and adjoining

Bloomfield avenue, which grants, consents or licenses were necessary or valuable to the defendant to qualify it to obtain permission from the township committee of the township of Montclair to construct, maintain and operate said electric railway through said avenue; *second,* that the defendant agreed with the plaintiff as the price and consideration for said grants, consents or licenses, to sell or procure to be sold to the plaintiff $10,000 of the bonds of the defendant then issued or to be issued, and $20,000 of its shares of capital stock, within such reasonable time thereafter as the said plaintiff should determine, upon application by the plaintiff for the same and upon its paying as the defendant might direct $10,000 in cash, thereby giving to the plaintiff in return for the said grants, consents or licenses an option to take said bonds and stock on payment of $10,000 in cash, within such reasonable time thereafter as the plaintiff should determine. And it is averred that at the time of making said agreement, and upon the faith thereof, the plaintiff executed and caused to be executed and delivered to the defendant the said grants, consents and licenses in writing, and the defendant accepted the same and made use thereof by depositing them with the township committee as a precedent condition and qualification for the grant of authority which was then made by the township committee to the defendant to construct, maintain and operate its railway in said avenue, on and in front of the said lands owned and controlled by the plaintiff, and that the defendant did, upon receiving said grants, consents and licenses and said authorization from the township committee, construct and has ever since maintained and operated its said railway in said avenue and on and in front of said lands. This count also contains the averment that within a reasonable time thereafter, &c., the plaintiff determined to exercise its option by taking said bonds and stock and paying said cash, and notified the defendant thereof and demanded the said bonds and stock of the defendant, then and there tendering itself and being ready to pay the said cash, but the defendant denied the existence of said agreement and refused to accept said pay-

ment or deliver said bonds or stock or any part thereof, and has always since refused and still refuses so to do. In this count is contained the averment that the said bonds and stock were at the time of such refusal, &c., worth more than the said sum of $10,000, to wit, &c., whereupon the plaintiff claims damages.

The demurrer to the declaration admits all the facts set out which are properly pleaded. The case, then, briefly is this: The plaintiff was the owner of lands fronting on the street in question. Its title extended presumptively to the middle line of the street. The railroad company proposed to lay a line of electric railway in the street in front of the plaintiff's lands. By the statute the consent of a certain proportion of the owners of lands fronting on the street was necessary to authorize the township authorities to make the grant to the railway company. To accomplish its purposes the company bargained and agreed with the plaintiff for certain grants, consents or licenses, which were necessary and valuable to the defendant to qualify it to obtain permission from the township committee to construct, maintain and operate said railway, and agreed to pay therefor the consideration named; that the plaintiff executed and delivered to the defendant the said grants, consents or licenses in writing; that the defendant accepted them and made use thereof by depositing them with the township committee as a precedent condition and qualification for the grant of authority, which was then and there made by the township committee to the defendant, to construct, maintain and operate its railway in said avenue and on and in front of the said lands owned or controlled by said plaintiff and elsewhere in said township, and that the defendant did, upon receiving said grants, consents and licenses and authorization from the township committee, construct and ever since has maintained its railway on the said avenue and on and in front of said lands. These averments are such as would make a good count for the breach of a contract of sale, viz., a contract of bargain and sale, agreement to pay, delivery and acceptance of the

thing contracted for, with a sufficient breach. On the face of this pleading the plaintiff is entitled to recover.

The demurrer filed by the defendant is based upon the contention that the contract set forth in the declaration is inoperative and void as against public policy.

It is undeniable that the owner of lands fronting on a public street has a property right in fee to the middle line of the street, subject to the public easement, and another property right in the whole street, by way of an easement of the right of way. It is also undeniable that the use of a public street by the location and use of it by electric cars may be injurious to the property of an abutting owner. The general rule of law is that a person having property, or a right in the nature of property, may enter into a contract to dispose of or encumber the same which shall be enforceable in a court of law. Independently of any legislative authority, it seems to be quite clear that if one of these companies should contract with abutting owners for the privilege of laying its tracks in front of their premises, such a contract would have sufficient consideration and would be valid and enforceable at law.

The act of the legislature under which the defendant was organized confers upon such companies the right to erect poles and use the trolley system, so far as a public easement is concerned, with a view to public convenience in the use of the streets, and if acts done under the color of the statute, or of an ordinance in conformity therewith, be found to be an unlawful invasion of the rights of private property, an action will lie in which neither the act nor the ordinance would be a justification. *Roebling* v. *Trenton Passenger Railway Co., 29 Vroom* 666. In the present instance the written consent given by the plaintiff was to the construction, operation and maintenance of an electric street surface railway, to be operated by the overhead-trolley system, with the necessary poles and wires strung thereon for the proper equipment of the same, in front of said premises on said highway. Such a consent would be a defence to any action brought by the plaintiff for damages for that use of its property.

The power to grant to the defendant the use of the street

for its railroad purposes was vested in the township authorities, but the legislature prohibited such a grant being made unless by the consent of the owners of one-half of the lands fronting on the street on which the railway was proposed to be constructed. In prescribing this condition the legislature recognized in such owners the right to give or withhold their consent. This concession is in recognition of either their property rights or their interests in the public highway on which their property fronts. The argument of the counsel of the defendant assumes that these consents are to be influenced solely by the consideration whether such a use of the street was promotive of public policy. The legislation affords no warrant for such an assumption. The question whether or not the construction of an electric street railway was promotive of public policy is lodged with the municipal authorities. These authorities have the power to approve of the use of a public street for such purposes or to refuse its permission. Landowners on the line of a public street on the proposed route of an electric railway are not vested with the jurisdiction to determine whether such an improvement would be for the public benefit or not. They have no power to license or to prohibit. That jurisdiction is vested in the local public authorities. The privilege conferred upon the owners of lands fronting on the street on which a street railway is proposed to be built is conferred upon them solely for the protection of their own property rights.

The propositions relied on by the defendant's counsel to sustain the contention that this transaction is void as against public policy, are:

*First.* It is insisted that a contract of this character to obtain legislation is contrary to the welfare of the state, as it tends to corrupt the legislative body, and makes the passing of vicious and harmful legislation possible. Such contracts, it is argued, are not enforceable.

If these consents as a condition precedent to the action of the township committee be injudicious, or even obnoxious to public policy, the fault is with the legislature, which made the consent of the owners of one-half of the abutting lands

a condition precedent to the passing of an ordinance. Nor did the legislature prescribe any terms on which such consents should be given. That subject was left to be adjusted between the owners of the lands and the company. The township committee would not be justified in rejecting a consent for the reason that it was obtained for a consideration, or in refusing to consider the company's application for a license on the ground that it had made compensation to the owners of lands abutting on the avenue for the inconvenience they might suffer by reason of the construction of the railway, the erection of poles and wires and the operation of the road.

The cases cited on this head to sustain the demurrer are inapt. In *Sharp* v. *Teese,* 4 *Halst.* 352, 354, a note given by an insolvent debtor to two of his creditors in consideration of their withdrawing their opposition to his discharge under the Insolvent act, was declared to be void. The reasoning of the court which led up to that decision was that "the policy of our insolvent law is that a full and fair disclosure and surrender of the property of the debtor shall be obtained; that on such disclosure and surrender he shall be, without further impediment, liberated from confinement, and that all creditors shall be placed on an equal footing, without preference, except where liens exist, and shall equally partake of the property which by such disclosure and surrender is subjected to the control and disposal of the law." Any transaction or arrangement which tends to defeat either of these purposes was held to be inconsistent with the policy of the law. In *Smith* v. *Applegate,* 3 *Zab.* 352, a note given in consideration of withdrawing opposition to a public road was held to be void as founded on an illegal consideration. In that case the plaintiff was a caveator against laying out the road. He withdrew his opposition for a consideration, for which the note was given, and agreed that the freeholders' return should be set aside and the road recorded. In delivering the opinion of the court, Chief Justice Green said: "There can be no doubt of the right of the landholder over whose land a highway is proposed to be laid out to sell either

the land itself or the right of way over it. Nor is it perceived that there can be any impropriety in the applicants for the road purchasing either the land or the right of way. But it is clear from the evidence that neither a sale of the land itself nor of the right of way over it formed the consideration of the note in question. * * * It was to remove the opposition made by the payee as a caveator to the laying out of the road, and to obtain his consent to setting aside the certificate of the freeholders, that the road was unnecessary and injurious, and thereby to obtain a confirmation of the return of the road. * * * The laying out of highways is peculiarly a matter of public concern. Its design is to promote not private rights, but the public convenience. Private interests are affected, but incidentally only, in pursuit of the public good. * * * It is clearly a matter of public policy that highways should be laid out whenever and wherever the public good requires it. It is equally a matter of public policy that such roads as are unnecessary and injurious should not be laid out. They are to be opened and maintained at the public expense. The opening, therefore, of an unnecessary road is a public injury, no less than a wrong to the individuals whose property is immediately affected. It increases needlessly the public expenditure and the burthen of taxation; hence the law, while it intrusts the laying out of roads to the surveyors of the highways, subjects their decision to a review by the chosen freeholders, who are specially charged and are presumed to be familiar with the pecuniary interests of the county." *Id.* 356, 357. In the case just cited the action of the plaintiff imposed upon the public the expense of an unnecessary road and which the freeholders had found to be unnecessary. Such a transaction was clearly violative of public policy. *Slocum* v. *Wooley,* 16 *Stew. Eq.* 451, 454, rests upon the same principle. In *Gulick* v. *Ward,* 5 *Halst.* 87, a contract to forbear to propose to the postmaster-general to carry the mail on a mail-route was held to be void as against public policy. By an act of congress regulating the post-office establishment the method of letting contracts to carry the mail was by advertis-

ing for bids, the contract being let to the lowest bidder. A con-
tract between two persons, both of whom intended to bid, that
the one should abstain from bidding for a consideration, was
clearly in violation of the policy of a statute. *Ray* v. *Mackin,*
100 *Ill.* 246, was also a case in which a combination was
made between two persons engaged in the business of street
paving for the fraudulent suppression of competition for a
street paving contract.   Such an agreement was properly
declared to be against public policy and a fraud upon persons
who by the charter were required to pay for the improve-
ment.   On the same principle it was decided that a contract
by the owners of newspapers was illegal, whereby they agreed
that for the term of two years, in case of the designation of
either paper to publish the laws, the net amount received
for this service, after paying the expense of the publication,
should be equally divided between them, and that their news-
papers during said two years should be alternately selected
and designated for the purpose of publishing the laws. *Brooks*
v. *Cooper, 5 Dick. Ch. Rep.* 761.

In *Noice* v. *Brown, 9 Vroom* 228; *S. C.,* 10 *Id.* 133, an
agreement by a married man to marry another person when
a divorce should be decreed between himself and his wife,
in a suit then pending, was held to be void.   Chief Justice
Beasley, delivering the opinion of the court, used this lan-
guage: "The institution of marriage is the first act of civili-
zation, and the protection of the married state against all
molestation or disturbance is a part of the policy of every
people possessed of morals and laws.   But this relationship,
in order to execute the purpose for which it is established,
requires the undivided devotion of each of the parties to it
to the other, and the consequence is that it is invaded and
impaired by anything which has a tendency to alienate such
devotion.   But this plaintiff claims the right to take to
herself that affection of this husband which, in legal theory
at least, belongs to the wife; but such a transfer the law will
not sanction.   Such conduct is a gross violation of the rights
of the wife." In *Sterling* v. *Sinnickson, 2 South.* 756, 761,
a sealed bill, by which the defendant promised the plaintiff

$1,000 if he was not lawfully married within six months, was held to be void. This decision was based substantially on the same grounds on which Noice *v.* Brown was decided. It was said that marriage lies at the foundation not only of individual happiness, but also the prosperity, if not the very existence of the social state, and the contract was held to be void because it was a restraint on the freedom of choice and of action in a case where the law wills that all shall be free. In all the cases of the class cited the controlling feature which avoids the contract is that it contravenes the policy of a statute or infringes upon some moral or legal duty or obligation.

In *Grandin* v. *Grandin*, 20 *Vroom* 508, 511, an agreement in consideration that the plaintiff would withdraw a *caveat* he had filed against the probate of a will and make no further opposition to such probate, and would assign to the defendant, &c., all his right, title and interest in the real and personal estate of the deceased, &c., was held to be a sufficient consideration for a promise to pay him a certain sum. The plaintiff was the heir-at-law and the defendant the residuary legatee.

Promoters of a railway not yet incorporated may enter into contracts to purchase land for the use of its railway if it become an incorporated company, although the contract to purchase is entered into to induce the owner to withdraw his opposition to the passage of the act of incorporation. Such a contract has been held to be valid, although the landowner with whom the contract was made was a peer, and as such was capable of voting for or against the proposed incorporation, it not being shown on the record that the money was promised as a consideration for his vote being given or withheld, or that the parties to the agreement intended to conceal it from the individual landowners on the line, or from the legislature, or that any fraud was intended or permitted on any party. *Simpson v. Lord Howden, 9 Cl. & F.* 61; *S. C., 10 Ad. & E.* 793; *Eastern Counties Railway Co.* v. *Hawkes, 5 H. L. Cas.* 331; *Edwards* v. *G. J. Ry. Co., 7 Sim.* 337; *S. C., 1 Myl. & C.* 650; *Vauxhall Bridge Co.* v. *Earl of*

*Spencer,* 1 *Jac.* 64; *Taylor* v. *C. & M. Ry. Co., L. R.,* 4 *H. L. Cas.* 628, 637; *Storer* v. *G. W. Ry. Co.,* 2 *Younge & C.* 48, 49; *Attorney-General* v. *Mid-Kent Ry. Co. and S. E. Ry. Co., L. R.,* 3 *Ch. App.* 100; *Wilson* v. *Furness Ry. Co., L. R.,* 9 *Eq. Cas.* 28; *Greene* v. *West Cheshire Ry. Co., L. R.,* 13 *Eq. Cas.* 44.

*Second.* It is contended that this agreement is illegal, on the ground that such consent given by an individual affects not only his own property, but the property of others and the interests of the public at large, and should be given or withheld by the landowner as a citizen.

It is difficult to perceive on what ground a bargain of this character with one landowner can be said to be a fraud on other landowners or upon the public in general. The act provides simply for the consent of landowners. It does not contemplate a petition or application by them which shall influence the township committee to grant the license. The application is made by the company, and the requisite consent of landowners being given, the granting or refusing of the ·license is committed to the discretion of the township committee, and the expense of the work to be done in executing it is borne by the defendant.

In *Lord Howden* v. *Simpson, supra,* the defendants were members of a company formed for the purpose of constructing a railway; a bill had been introduced in parliament according to which the line would pass through the plaintiff's estates and near his mansion, and he was opposing the passing of the bill. The defendants agreed that if he would withdraw his opposition and assent to the railway, they would endeavor to deviate the proposed line, and in case the then bill should pass they would pay the plaintiff £5,000 for the damage which his residence and estate would sustain from the railway's passing according to the deviated line. The plaintiff withdrew his opposition to the bill. In an action upon this agreement the defendants pleaded by their second plea that the projected railway was intended to pass through lands of divers individuals, and that the said agreement was made and entered into privately and secretly between the parties thereto, and without the consent or knowledge of the

individuals through whose lands the said railway was intended to pass. This plea was on demurrer overruled. Lord Chief Justice Tindal, delivering the opinion of the Court of Exchequer Chamber, in disposing of the contention on the part of the defendants that this agreement was a fraud on other landowners, used this language: "If such intention [that is, to keep the agreement a secret from the other landowners] had even existed, there would still be a difficulty in holding that the deed would be fraudulent, on the ground that the supposed goodness of the bargain was intended to be concealed; for it would seem that each landowner might lawfully make the best agreement he could for himself with any company of projectors, just in the same manner as if a private individual, for any purpose of his own, were negotiating to purchase the land of the same persons. There is no common obligation on all the different proprietors to place themselves on the same footing as there is in the case of a general composition with creditors, in which case there is sometimes an express, and generally an implied, agreement that all, or all who are not expressly excepted, shall share equally and derive an equal benefit from the estate of the insolvent. It is that agreement or understanding alone which imposes an obligation on each creditor to be in the same situation as another; and there seems no analogy between their situation and that of unconnected landowners." 10 *Ad. & E.* 793. This judgment was affirmed in the House of Lords. 9 *Cl. & F.* 61.

The case is here on demurrer. The defendant entered into the contract in question; it received and used the consent of the plaintiff, and had the benefit of it. The burden of establishing fraud which shall enable the defendant to repudiate its obligation to pay, while it retains the consideration, is upon the defendant. No facts appear upon the record on which the contention of fraud in fact, either upon the landowners or the public, can be rested.

There should be judgment on the demurrer for the plaintiff.