PARRISH ET AL. v. HAMILTON, GLENDALE & CINCINNATI TRACTION COMPANY.

1. PURCHASE OF CONSENTS REQUIRED BY SEC. 3439, REV. STAT.

The purchase of the consents required by Sec. 3439, Rev. Stat., providing that the written consents of more than half the property abutting a street along which the construction of a street railway is proposed, must be obtained as a condition precedent to the grant thereof by the council of a municipal corporation, is unlawful. (Swing, J., dissents.)

2. STREET RAILWAY NOT AN INCREASED SERVITUDE REQUIRING COMPENSATION

The building of a street railroad in a public street, in the absence of any interference with the access to or egress from abutting property, is not an increased servitude constituting an appropriation of private property for which a person consenting to the construction thereof is entitled to compensation.

3. CONSENT MAY BE WITHDRAWN BEFORE PASSAGE OF ORDINANCE.

The consent of an abutting owner to the construction of a street railway upon a street of a municipal corporation required by Sec. 3439, Rev. Stat., as a prerequisite to a grant therefor by the council thereof may be withdrawn at any time before the final passage of the ordinance.

4. STREET RAILWAY CANNOT PLEAD ESTOPPEL AGAINST DEFECTS.

Inasmuch as a street railway company in proceeding to secure the consents of abutting owners as required by Sec. 3439, Rev. Stat., and constructing its roads, is presumed to know the law, and must be considered as knowing the defects of its grant, it cannot plead estoppel.

5. ONE COMPANY CANNOT STRADDLE TRACKS OF ANOTHER.

A street railway company having been granted the right to construct its tracks in a street already occupied by another company under a prior grant, has no right to interfere with its franchise or vested rights by undertaking to straddle its tracks. Hamilton St. Ry. Co. v. Electric Transit Co., 3 Circ. Dec. 158 (5 R. 319), followed.

**Shepherd & Shaffer,** for plaintiff, cited:

On motion to strike out:

1. The statute expressly prohibits a street railroad to be constructed without the consent of a majority in interest of the owners of property on the street. Roberts v. Easton, 19 Ohio St. 78, 86.

2. The consent of abutting property owners inures to the lowest bidder, by whomsoever obtained. Knorr v. Miller, 3 Circ. Dec. 297 (5 R. 609).

3. Obtaining consents by purchase. Makemson v. Kauffman, 35 Ohio St. 444, 445; Doane v. Chicago City Ry. Co., 45 N. E. Rep. 507 [160 Ill. 22; 35 L. R. A. 588]; Pingry v. Washburn, 1 Aik. (Vt.) 264 [15 Am. Dec. 676]; Greenhood Pub. Policy, rules 316, 320; Marshall v. Railway Co., 57 U. S. 314; Liness v. Hesing, 44 Ill. 113 [92 Am. Dec. 153]; Trist v. Child, 88 U. S. 441; 3 Am. & Eng. Enc. Law, (1 ed.) 877, 878 and notes; Brown v. Brown, 34 Barbour 533; Oscanyan v. Arms Co., 103 U. S. 261; Howard v. First Independent Church, 18 Md. 451; Maguire v. Smock, 42 Ind. 1; Chicago, M. & St. P. Ry. v. Shea, 25 N. W. Rep. 901 [67 Ia. 678]; State v. Elizabeth, 35 N. J. L. 351; Smith v. Applegate, 23 N. J. L. 352; Bestor v. Waithen, 60 Ill. 138; Marsh v. Railway Co., 64 Ill. 414 [16 Am. Rep. 564]; St. Louis, J. & C. R. R. v. Mathers, 71 Ill. 592 [22 Am. Rep. 122]; 104 Ill. 257; Dean v. Clark, 30 N. Y. Supp. 45 [80 Hun. 80]; 19 Am. & Eng. Enc. of Law, (1 ed.) 565; 9 Ib. (1 ed.) 881; Jacobs v. Tobiason, 21 N. W. Rep. 590 [65 Ia. 245; 54 Am. Rep. 9].

**H. R. Probasco,** for plaintiff, cited.

1. Right to object that property owners' consents were not obtained. Mt. Auburn Railway v. Neare, 54 Ohio St. 154 [42 N. E. Rep. 768]; Sandfleet v. Toledo, 8 Circ. Dec. 711 (10 R. 474); Neare v. Cable Ry. Co. 11 Re. 782 (29 Bull. 171, 173); Simmons v. Toledo, 3 Circ. Dec. 64 (5 R. 125, 145); Harrison v. Railway Co., 9 Re. 805 (17 Bull. 265, 276); Sommers v. Railway Co., 6 Re. 887 (8 Am. Law Rec. 612); Sec. 2502, Rev. St.

2. Necessary consents a jurisdictional fact. Roberts v. Easton, 19 Ohio St. 78; Booth Street Railways, Sec. 4; Simmons v. Toledo, 4 Circ. Dec. 69 (8 R. 542); Tone v. Columbus, 1 Circ. Dec. 168 (1 R. 307, 316); Covington v. Nelson, 35 Ind. 532, 536.

3. The rights of abutting property holders to consent is not a property right, but is a personal privilege, and is merely "permitting the streets to be used for street railroads." Roberts v. Easton, 19 Ohio St. 86; Simmon v. Toledo, 4 Circ. Dec. 69 (8 R. 542); Tone v. Columbus, 39 Ohio St. 281, 310 [48 Am. Rep. 438]; Rapp v. Railroad Co., 9 Re. 302 (12 Bull. 119, 120); Knorr v. Miller, 11 Re. 165 (25 Bull. 128, 131).

4.　The construction and operation of a street railway is not an ad ditional servitude or burden upon the property. Street Railway v. Cumminsville, 14 Ohio St. 523; Booth Street Railways, Secs. 80, 82, 83, and cases cited in note 1 to Sec. 83; Joyce Elec. Law, Secs. 295, 334, 336; Elliott Roads & Streets, p. 558, and cases cited in note 3.

5.　Withdrawal of consent. Booth Street Railways, Sec. 22; Joyce Elec. Law, Sec. 355; Hutchinson v. Belmar, 39 Atl. Rep. 643 [61 N. J. L. 443]; Hutchinson v. Belmar, 45 Atl. Rep. 1092 [62 N. J. L. 450]; Hays v. Jones, 27 Ohio St. 218; Sandfleet v. Toledo, 8 Circ. Dec. 711 (10 R. 460); Simmons v. Toledo, 4 Circ. Dec. 69 (8 R. 535, 546, 548); Mc-Gonnigle v. Arthur, 27 Ohio St. 251, 256; State v. City of Elizabeth, 35 N. J. L. 351, 357; Bullock v. W. C. T. Co., 23 Chicago Legal News 147; 33 Am. & Eng. Enc. Law, 972; Tone v. Columbus, 1 Circ. Dec. 168 (1 R. 305, 307, 318).

6.　The public, the abutting property owners, and all persons, had the right to assume that the law was being obeyed instead of violated by the public authorities. Tone v. Columbus 1 Circ. Dec. 168 (1 R. 305), quoting Cooley, J., in Motz v. Detroit, 18 Mich. 495; Steckert v. East Saginaw 22 Mich. 104.

7.　Mayor's veto. Dillon Munic. Corp. (3 ed.), Sec. 309 n.; 28 Am. & Eng. Enc. of Law, (1 ed.) 447, 448; Burdsall v. Carrick, 3 Nev. 154; 23 Am. & Eng. Enc. Law, (1 ed) 190, and cases cited in note 2, and pages 213 and 124; Constitution of the United States, Art. 1, Sec. 7, Clause 2; Biggs v. McBride, 21 Pac. Rep. 878 [17 Ore. 640 and 645; 5 L. R. A. 115]; Cooley Const. Limit. (6 ed.), pp. 153, 155; 50 Tenn., 3 Heiskell, 442, 444.

8.　The consent of abutting property owners, by whomsoever obtained, inures to the lowest bidder. State v. Bell, 34 Ohio St. 194; Knorr v. Miller, 3 Circ. Dec. 297 (5 R. 609); Knorr v. Miller, 11 Re. 165, (25 Bull. 128, 130).

9.　We contend that the "consents," the "voices," the "votes," the "assents" could not be found upon valuable consideration, and their obtention by purchase rendered them absolutely void. Doane v. Railway Co., 45 N. E. Rep. 507 [160 Ill. 22; 35 L. R. A. 588]; State v. City of Elizabeth, 35 N. J. L. 351, 357; Maguire v. Smock, 42 Ind. 1; Howard v. F. I. Church, 18 Md. 451; Makemson v. Kauffman, 35 Ohio St. 444, 445; Smith v. Applegate, 34 N. J. L. 353, 358; Chicago, M. & St. P. Ry. v. Shea, 25 N. W. Rep. 901 [67 Ia. 728, 735]; Jacobs v. Tobiason, 21 N. W. Rep. 590 [65 Ia. 245, 247].

10.　Agreements which have apparent tendency to induce a public officer to act partially are void. Wald's Pollock Contracts (1885 ed.), pp.

283, 285; Woodstock Iron Co. v. Extension Co., 129 U. S. 644, 662 and 63 [9 S. Ct. Rep. 402].

11. An agreement, one and entire, if illegal and void in one particular, the illegality penetrates and corrupts the whole agreement and vitiates it altogether. Brown v. Brown, 34 Barbour 533.

12. Secret compositions, whereby undue advantages have been obtained by some creditors of an insolvent, over others, are void. Front v. Gage, 3 Allen 560; Kullman v. Greenebaum, 28 Pac. Rep. 674 [92 Cal. 403; 27 Am. St. Rep. 150]; Dexter v. Snow, 12 Cushing, 594, 595; Story Eq. Juris., Secs. 378, 379; Greenhood Public Policy, rule 154, p. 141.

13. Equity jurisdiction. C. & N. W. R. Co. v. Railway Co., 6 Bissell 219; High Inj. 607; Joyce Elec. Law, Sec. 409 and cases cited in note 12; New York, N. H. & H. R. Co. v. Traction Co., 32 Atl. Rep. 953 [65 Conn. 410; 29 L. R. A. 367]; High Inj. 924; Pennsylvania Ry. Co. Appeal, 93 Pa. St. 150; Pittsburgh Junc. Ry. Co.'s Appeal, 122 Pa. St. 512, 531; Sharon Ry. Co.'s Appeal, 17 Atl. Rep. 234 [122 Pa. St. 545; 9 Am. St. Rep. 133]; High Inj. 1271; Booth Street Railways, Sec. 109 and note.

14. Where the right to cross has been sought by appropriation proceedings. Lake Erie, etc. Ry. v. Railway Co., 7 Re. 364 (2 Bull. 187, 189); Giesy v. Railway Co., 4 Ohio St. 308, 326; Lewis Em. Dom., p. 289, 293; Appeal of Pa. Ry. Co., 18 Atl. Rep. 522 [128 Pa. St. 509]; Valley Ry. Co. v. Pouchet, 2 Circ. Dec. 492 (4 R. 187); Madden v. Railway Co., 11 Circ. Dec. 571 (21 R. 73, 78); Joyce Elec. Law, Sec. 408, n. 11; Kinsman St. Ry. Co. v. Railway Co., 36 Ohio St. 239, 251, 252; High Inj., 607; Elliott Railroads, Secs. 1049 and 1125, and cases cited in notes.

15. Laches. High Inj., Secs. 913, 618, 643; Bispham Principles of Equity, 354; Snell Principles of Equity (Griffith ed.), Sec. 35.

R. N. Shotts, for plaintiff, cited:

1. The condition precedent to passing the ordinance was, that the required consents be procured. Roberts v. Easton, 19 Ohio St. 78.

2. The fee in dedicated streets is in the city for the use of the public. Cincinnati & S. P. Ave. St. Ry. v. Cumminsville, 14 Ohio St. 523, 546.

3. The construction of the street railroad on grade is not an additional servitude. Cincinnati & S. P. Ave. St. Ry. v. Cumminsville, 14 Ohio St. 523; Cincinnati & H. Elec. St. Ry. v. Railway Co., 12 Circ. Dec. 113 (21 R. 391, 396).

4. The power to grant the use of the streets must be exercised for he benefit and in the interest of the public, including the abutting own-

ers.   Doane v. Chicago City Ry., 45 N. E. Rep. 509 [160 Ill. 22; 35 L. R. A. 588].

5.   Legislators should act with a single eye to the true interest or the whole people, and courts of justice can give no countenance to the use of means which may subject them to be misled by the pertinacious importunity and indirect influences of interested and unscrupulous agents or solicitors.   Marshall v. Railway, 57 U. S. (16 How.) 334, 335.

6.   Any agreement or combination among parties petitioning for the improvement of a street, by which a few individuals, desirous of causing the improvement to be made, procure the signatures of others to the petition by paying, or agreeing to pay, a consideration therefor, either directly or indirectly, is a fraud on the law and contrary to public policy.   Maguire v. Smock, 42 Ind. 1, 4; Howard v. Church, 18 Md. 451.

7.   Contracts illegal at common law, as being contrary to public policy, are such as injuriously affect or subvert the public interest, such contracts as by their terms or contemplated manner of performance must work some mischief affecting the body politic.   Sedgwick v. Stanton, 14 N. Y. 291; Comyn Contracts, 53.

8.   The effect of buying off conscientious opposition to an improvement.   Makemson v. Kauffman, 35 Ohio St. 444.

That certain consents were invalid:

1.   After conveyance in trust, there is no title remaining in the assignor.   Bank v. Bell, 14 Ohio St. 200, 211; Mannix v. Purcell, 46 Ohio St. 102.

2.   Placing property in the hands of an assignee for the purpose of placing it beyond owner's control.   Keen v. Hall, 31 Ohio St. 107, 110.

3.   A reservation of any power or control over the provision of the deed of assignment or the property assigned by him would be invalid. Chapin v. Thompson, 89 N. Y. 271, 280; Riggs v. Murray, 2 Johns Ch. 565.

4.   The question as to the right to withdraw before the final action is settled in Ohio.   Hays v. Jones, 27 Ohio St. 218; Story Agency, Sec 474; Simmons v. Toledo, 4 Circ. Dec. 69 (8 R. 542, 546).

5.   Life Estate.   Rapp v. Railroad Co., 9 Re. 302 (12 Bull. 119); Simmons v. Toledo, 4 Circ. Dec. 69 (8 R. 542); Tone v. Columbus, 1 Circ Dec. 168 (1 R. 308).

6.   Consent by telegram.   25 Am. & Eng. Enc. Law (1 ed.), 879. Western Union Tel. Co. v. Hopkins, 49 Ind. 223; 7 Allen, 548; Anglo-Am. Pack. & Provis. Co. v. Cannon, 31 Fed. Rep. 313; Greenleaf Ev (16 ed.), Sec. 86 and note 1; 25 Am. & Eng. Enc. Law (1 ed.), 876 and note; Smith v. Raston, 54 Maryland 138.

Shepherd & Shaffer, for plaintiff, cited:

Butler County.

1. Taxpayer's suit. Gallagher v. Johnson, 1 Dec. 264 (31 Bull. 24); Peppard v. Cincinnati, 9 Dec. 102 (6 N. P. 57) ; Sommers v. Cincinnat, 6 Re. 887 (8 Am. Law Rec. 612) ; McClain v. McKisson, 8 Circ. Dec. 357 (15 R. 517); 17 Am. & Eng. Enc. of Law, (1 ed.) 500, and authorities.

2. Abutting property owners' suit. Glidden v. Cincinnati, 4 Dec. 423 (30 Bull. 213) ; Hamilton v. Electric St. R. R., 8 Dec. 174 (5 N P. 457); Simmons v. Toledo, 4 Circ. Dec. 69 (8 R. 535).

3. Motive. Dietz v. Traction Co., 6 Dec. 513, 515 (4 N. P. 399); Brockman v. Creston, 44 N. W. Rep. 822 [79 Ia. 587, 588]; Mazet v. Pittsburg, 20 Atl. Rep. 693 [137 Pa. St. 548]; Gallagher v. Johnson, 1 Dec. 264 (31 Bull. 24); Peppard v. Cincinnati, 9 Dec. 102 (6 N. P. 57); McClain v. McKisson, 8 Circ. Dec. 357 (15 R. 517); 17 Am. & Eng. Enc. of Law, (1 ed.), 500.

4. Invoking equity arm of court. Otis v. Gregory, 13 N. E. Rep. 39 [111 Ind. 504]; Finch v. Finch, 10 Ohio St. 500, 508; Ainslie v. Wilson, 50 Ga. 418.

5. Guardian. Booth Street Railroads, par. 20 ; Rapp v. Railway Co., 9 Re. 302 (12 Bull. 119); Bullock v. Rapid Transit Co., 23 Chicago L. N. 149.

6. Withdrawals. Simmons v. Toledo, 4 Circ. Dec. 69 (8 R. 535) ; Simmons v. Toledo, 51 Ohio St. 626; Hayes v. Jones, 27 Ohio St. 218

7. Straddling track. Hamilton St. Ry. Co. v. Electric Transit. Co., 3 Circ. Dec. 158 (5 R. 319); Elliott Roads & Streets (2 ed.), par· 750, 753 ; Indianapolis Cable St. R. R. v. Street Ry. Co., 24 N. E. Rep. 1054; 26 N. E. Rep. 893 [127 Ind. 369; 8 L. R. A. 539].

8. On the point whether a street railway has exclusive use of the right of way within its grant, as against another street railway. Elliott Roads & Streets (2 ed.), Secs. 745, 753 ; North Baltimore Pass. Ry. Co. v. Mayor, 23 Atl. Rep. 470, 471 [75 Md. 247 ; Indianapolis Cable St. Ry· v. Street Ry. Co., 24 N. E. Rep. 1054 [127 Ind. 369; 8 L. R. A. 539]; Ft. Worth St. Ry. Co. v. Street Ry. Co., 7 S. W. Rep. 381 [68 Tex. 169]; Booth Street Railways, par. 108, 110 ; Citizens Coach Co. v. Ry. Co., 33 N. J. Eq. 267; Pacific Ry. Co v. Wade, 27 Pac. Rep. 768 [91 Cal. 449] ; Citizens' Gas & Mining Co. v. Elwood, 16 N. E. Rep. 624 [114 Ind. 332] Crawfordsville & E. Twp. Co. v. Smith 89 Ind. 290; Charles River Bridge v. Bridge, 36 U. S. 420; Waterbury v. Railroad Co., 54 Barb. 388 ; Titusville & P. C. R. Co. v. Railway Co., 12 Phila. 642; Norris & E. Ry. Co. v. Blair, 9 N. H. Eq. 635 ; Railway Co. v. Alling, 99 U. S. 463 ; Hamilton Elec. St. Ry. Co. v. Trans. Co., 3 Circ. Dec. 158 (5 R. 319); State v. Gaslight & Coke Co., 18 Ohio St. 262, 293.

**Paxton & Warrington** and **Burch & Johnson,** for the defendant street railway company.

GIFFEN, J.

The question of law of first importance in the determination of this case is whether · not the consents required by Sec. 3439, Rev. Stat., before council can make a grant to any person, permitting such person to lay a railway in a public street of a municipality, can be purchased by the party desiring to obtain such grant and lay the street railway.

After reading and considering a large number of authorities submitted by counsel for defendant company, we are of opinion that the question can be best answered by a consideration and comparison of the cases of Doane v. Street Ry. Co., 45 N. E. Rep. 507 [35 L. R. A. 588; 160 Ill. 22, 34, 35 and 36] ; Montclair Military Academy v. Street Ry. Co., 47 Atl. Rep. 890, 894, and Makemson v. Kauffman, 35 Ohio St. 444, 455, together with the settled principles in this state determining the rights and interest of abutting property owners in a public street in a municipality, and the doctrine that in the absence of any interference with the access or egress to and from the abutting property, the building of a street railway in such public street is not an increased servitude which would be an appropriation of a private property right.

In Cincinnati & S. G. Ave. St. Ry. v. Cumminsville, 14 Ohio St. 523, which has never been doubted or overruled, and which fixes the law in this state, it is held that the building of a street railroad in a public street, when properly done and under the restrictions of the public council, is not such an increased servitude upon a street as to be a further appropriation of property rights.

That being so, it is difficult to see what private property right an abutting property owner has for sale when he undertakes to consent to the location of a street railroad in the public street in front of his property for a consideration. The right to give or withhold such consent either is or is not a property right. If it is a property right, then such right of a minority of forty-nine per cent. of the abutting lot owners cannot constitutionally be taken from them without consideration by the mere consent, gratutitous or purchased, of a majority of fifty-one per cent.

Further, whatever this right may be, it is of the same kind and nature to each of the abutting property owners, and it is manifestly unfair that some of them should receive a consideration and others either have this right taken from them or have their property subjected to the same conditions without receiving anything therefor.

If this is not a property right, but a political right or a governmental or administrative function entrusted to those abutting property owners, it is manifestly against public policy that their consent should be sold for a consideration.

It perhaps clouds the question to undertake to define clearly the fundamental nature of these consents.

Be the right to consent what it may, it is given alike to all the abutting property owners, and it is clearly inequitable and unjust that certain of such property owners should profit by parting with such consent and that others should not.

The case of Montclair Military Academy v. Street Railway Co., *supra*, while coming from a court of the highest respectability and authority, is not very persuasive in the case at bar ; because, in the first place, it involves a township road and a distinct finding of fact that the building of such railroad was an injury to the abutting property of the Montclair Military Academy and that it was an appropriation of property rights. That being so, that case was decided under a different condition of the established law from that prevailing in this state.

The case of Doane v. Street Railway Co., *supra*, is more in point ; that court there holding, as is the law in this state, that the mere building of a street railway in a public street is not the appropriation of the private property right.

Further, in the exercise of this right, whatever may be its nature, it is similar to the composition of creditors where a majority in number and amount is required to authorize certain actions in insolvent estates; and in such cases, the purchase of consents have always been held inequitable and contrary to public policy and good morals.

The Supreme Court of Illinois, in the case of Doane v. Chicago City Ry. Co., *supra*, lay down another reason which appeals to us as to why such consents should not be purchased or sold; that is, by the words of the statute, the consent of a majority must be obtained before the council can act, or make a grant. Therefore, the purchase of such consents is the purchase of an influence which is to be exercised upon the public legislative body in procuring them to act in their official capacity, and for this reason is against public policy and unlawful. The reason of the court in that respect is equally applicable to the law of Ohio.

Section 3439, Rev. Stat., provides :

" No such grant shall be made until there is produced to council, or the commissioners, as the case may be, the written consent of more than one-half of the land abutting on the street or public way along which it is proposed to construct such railway, or extension thereof."

The consent of a majority of the abutting property owners is thus fixed as a condition precedent to the power of council to make the grant ; and it is manifestly wrong that this prerequisite of a council's power should be bartered or sold.

Parrish v. Traction Co.

But as against all this, is urged the opinion and reasoning of Judge Boynton, in the case of Makemson v. Kauffman, *supra*, where, on page 455, he says:

"Nor does it seem to us that the mere fact that Frantz, Cookston and Heddings, signed the petition for the improvement in consideration of the promise of others to pay whatever assessments might be made upon their lands respectively, made it the duty of the commissioners to reject their names. It does not appear that they were opposed to the improvement, nor that they did not believe it demanded by the public convenience and welfare. What would be the effect of buying off a conscientious opposition to the improvement, we do not determine, but where the improvement is of general public utility or necessity, we are unwilling to say that the mere circumstance that a land owner of the vicinity signed a petition upon the promise of another to relieve him from the burden of the assessment, required the commissioners to adjudge that a fraud upon the law was intended, and thereupon to reject the petitioner's name, in determining whether or not a majority of the resident landowners whose lands were reported as benefited, were in favor of the improvement."

There is a marked distinction between this case and the case at bar, in that in Makemson v. Kauffman, *supra*, the improvement of the county road involved the charging of the abutting property owner with an assessment for the cost of making the road; and that in giving, or withholding, his consent, whether he exercised his judgment on a public question or not, he certainly did also act in regard to a matter affecting his private property interest. It is no less a property right to relieve one's self, or one's property, from a debt, or liability to assessment, than to actually grant or convey a property interest; and in that case nothing more was attempted to be done than to remove the objection of Cookston and Heddings to being subjected to an assessment for making the road. As the court very clearly said, that case did not involve the buying off of a conscientious opposition to an improvement; in fact, it might be a fair inference from that case that were not the property rights of Cookston and Heddings involved, and their consent had been on the public question of the expediency of the improvement, the court would have looked at it otherwise. Further, where the question of private property right is entirely eliminated, and the giving or the withholding of con sents is to affect a general or public interest, it is extremely doubtful as to whether or not a court would examine into the good faith of a con sent given for a consideration; but that such a transaction would be discountenanced and held unlawful for reasons of public policy.

We, therefore, are of opinion that it is unlawful in this state to purchase for a consideration the consents required by Sec. 3439, Rev. Stat.

As to the Kahn Bros. and Creecraft withdrawals, it is settled by the case of Simmons v. Toledo, 4 Circ. Dec, 69 (8 R. 535), that a property owner may withdraw his consent at any time before the council has acted upon it and passed the ordinance.

We are, therefore, of the opinion that these parties had a right to withdraw their consents at any time before the final passage of the ordinance.

On the subject of estoppel, we find no merit in the claim of the defendant company. Whatever it did was done with a full knowledge of all the defects in its grant, and it is deemed to know the law.

In the controversy between defendant company and the Hamilton & Lindenwald Electric Transit Company, where it is complained that the defendant company is undertaking to straddle the tracks of the railroad now existing in East avenue, between the corporation line and John street, we apply the same law that was laid down in the case of Hamilton Street Railway Electric Co. v. Electric Transit Co., 3 Circ. Dec. 158, 160 (5 R. 319), where this court, per Smith, J., said:

" We hold, secondly, that the defendant company has no right to interfere with the franchises or vested rights of the Hamilton Street Railroad Company by placing its track, as it is proposing and intending to do, over that of the horse-car line · which now legally occupies the center of High street from Second to Third."

This case is unreversed, and states the law as it now exists on this question.

Having expressed ourselves on these propositions, which are controlling upon the result of this case, we do not specifically address ourselves to each of the minor questions raised by the plaintiffs in these cases ; but say, that on these points, we fully approve the opinion o Fisher, J., in these cases in the court below.

**SWING, J.,** dissenting.

The conclusion arrived at by Judges Giffen and Jelke as to the purchase of consents is undoubtedly supported by the decision of Doane v. Street Ry. Co., 45 N. E. Rep. 507 [35 L. R. A. 588 ; 160 Ill., 22], but in my opinion it is contrary to the decision in Montclair Military Academy v. Street Ry. Co., 47 Atl. Rep., 890, and Makemson v. Kauffman, 35 Ohio St. 444.

It seems to me that the weight of the authority is not with the two latter cases, but whether so or not, we should follow the decision of our own Supreme Court. The latter case cannot in principle be distinguished from the case at bar, and it is directly opposed to the decision

Parrish v. Traction Co.

in the 140 Illinois, which is relied on as the authority for the decision in this case.

On principle it seems to me that Makemson v. Kauffman, *supra*, is correct. The right to give consents is one that pertains to property alone; it is measured and controlled by the feet front; the owner of the majority of the feet front gives the right. The owner may be a minor, a non-resident or an alien. No account is taken of the ownership; it is simply a majority of the feet front. The majority owner owes no obligation to the owner of the minority of the feet front. He has a right to consult his own best interests in giving his consent without regard to how it will affect the minority owner. If he should conclude that the construction of the street railway would benefit him, but at the same time damage the minority owner, his consent is just as valid as it would be if he thought it would benefit the minority owner. In fact, the real motive which actuated the majority owner in giving his consent might be that it was for the express purpose of injuring the minority owner, and yet it would be just as valid as if given for any other purpose. On principle it would seem self-evident that if there is any obligation resting on the majority owner towards the minority owner, there should be the same obligation resting on the minority owner towards the majority owner, and if the reasons of the majority owner in giving consent may be inquired into, the reason of the minority owner in withholding consent should be inquired into. Such inquiries would be entirely foreign to any purpose disclosed in our statutes; the feet front is the measure of the right, and it is purely a property right, not intended to be any more, and should not be.

It must be admitted, I take it, that a party desiring to get a majority of the feet front, may purchase the fee of a majority of the feet front for that purpose only, and then give a valid consent for a majority of the feet front; or if he lacks a portion of the majority, he may purchase sufficient to give him a majority of the feet front, and thus obtain a valid majority of the feet front; the purpose of the purchaser and the purpose of the seller may be in such instance for the purpose of giving a majority of consents; and further, the real motives may be to injure the minority owner; but there is no remedy to the minority owner, any more than there is a remedy to the majority owner against the minority owner when the minority owner acts from any pecuniary or other consideration in withholding his consent. If one may purchase from the owner, and the owner may sell his property for the purpose of giving consent, why may he not purchase the consent alone, and the owner retain the fee? Why may he not sell a part of his property as well as all

of it? I do not believe that the distinction can be drawn. The trouble is in attaching to property certain moral obligations where none were intended. It is purely fanciful and is not founded on good reason. The statute has recognized certain rights as belonging to the property owner, and these he exercises to suit himself, and in the exercise he is not accountable to any one else. With his motive or purpose nobody else has any concern.

The grant having been made, the burden is on those seeking to avoid it, to show that the consents were not legally given; and the evidence in this case fails to bring the case within the facts mentioned by Boynton, J., in Makemson v. Kauffman, *supra*, which he says they are not called upon to pass on and on which he does not express an opinion, although Okey, J., in his dissenting opinion, seems to think they are in the case.

One of the consents purchased in this case is as follows: The owner signed a remonstrance for the reason that he thought the building of the road would entail a street assessment on his property. He was not opposed to the road, except he wanted to avoid this expense. When the officers of the road agreed to pay what this expense was estimated to be he signed a consent. I fail to see any reason why he should not have acted towards his property and this road as he did, or where any wrong was done to other property owners or the public, and no other consent was stronger than this.

The only ground on which the purchase of consents can be held void, is that it is against public policy. I am unable to see what right of the public is injured or what harm is done to the public by the property owner giving his consent from some pecuniary or other motive which is personal to himself; as I have said, the right is measured entirely by the feet front; one man may own more than a hundred others, and be able to give a majority of the feet front. The legislature has given him this right, just as it has imposed on him the burdens in case of assessments, the burdens are against the property measured by the feet front. It is a property obligation, and the consents are property rights, and which the legislature having possessed has handed over to him to be granted or withheld as he deems to be for his best interests. The right of the public the legislature has vested in the officers of the public, and in them is lodged the right to grant or refuse the franchise, and these rights cannot be bought, and the action of these officers must be free from the taint of purchase or sale. No inducement can be offered to these officers to procure their vote either for or against the proposed grant. The acceptance by any such officer of anything of value, or any promise of reward, for his vote either for or against mak-

Parrish v. Traction Co.

ing such a grant would be bribery, and any one offering the bribe together with the officers accepting the same would be liable to prosecution.

As to the question of the withdrawal of the consent of Kahn Bros., the evidence clearly shows that it was not presented to the board at any time. The facts appear to be that Kahn Bros. had given their consent. Afterwards, some party acting in the interest of rival companies made statements to Kahn Bros., which were not strictly true, and acting under this information they signed a withdrawal. This withdrawal was taken and shown to one of the members of the board, but never was presented to the board, nor offered to be presented to the board. This is sufficient answer without regard to whether it might have been effective to have presented it after the ordinance had been put on its final passage by its being voted on by all the members once, as to which question I am not clear. Kahn Bros. are not insisting here on this withdrawal. On the contrary, the only persons insisting on treating it as a withdrawal are those who procured the same through a misrepresentation of the facts and are rivals to this company to whom the grant was made.

As to the question whether the right could be granted to the company in East avenue, the right having been previously granted to the Hamilton & Lindenwald Co. on the same street, I have had some doubt; but the uncontradicted evidence was to the effect that the tracks, ties, poles and wires of the present company would in no way interfere with the Hamilton & Lindenwald road; neither would the operation of the new road interfere with the operation of the other. If such is the case, it is difficult to see how the H. & L. is injured.

I can not refrain from remarking in closing that the opposition to this grant is prosecuted by rival interests, that the construction of the road and its operation might be injurious to rival companies is probably true; but that would be beneficial to the interests of the general public and to the property owners and the people of Hmailton is undoubtedly true, and if there is any doubt as to the rights of the parties, that doubt should be resolved in favor of the public.